# State of Vermont v. Alfred Raymond, Jr.

[538 A.2d 164]

No. 86-460

Present: Allen, C.J., Peck, Gibson and Dooley, JJ., and Barney, C.J. (Ret.), Specially Assigned

Opinion Filed November 25, 1987

*Joanne Baltz*, Windsor County Deputy State's Attorney, White River Junction, for Plaintiff-Appellee.

*R. Peter Decato*, Lebanon, New Hampshire, for Defendant-Appellant.

**Gibson, J.** Defendant appeals his conviction of lewd and lascivious conduct in violation of 13 V.S.A. § 2602. He contends that he was denied his constitutional rights under the Confrontation

Clauses of both the Sixth Amendment to the United States Constitution and Chapter 1, Article 10 of the Vermont Constitution. Defendant also argues that the trial court improperly applied V.R.E. 403 in foreclosing cross-examination of the State's witnesses as to the specifics of investigations pending against a key State witness. We affirm.

## I.

Defendant was charged with one count of sexual assault in violation of 13 V.S.A. § 3252(3) and one count of lewd and lascivious conduct in violation of 13 V.S.A. § 2602, for alleged sexual misconduct with his twelve-year-old son. Prior to trial, the State filed a motion in limine requesting that defendant be instructed to refrain from examining witnesses about any alleged acts of prostitution or thefts committed by a State's witness, defendant's long-term, live-in girlfriend, the mother of the alleged victim. Immediately preceding the trial, the court stated that it would allow defendant's counsel to bring out the existence of a dispute between the witnesses and defendant, but would not allow counsel to go into the details of the allegations involving prostitution and theft.

During the course of the trial, counsel attempted to cross-examine the girlfriend with respect to the details of the theft investigation. On the State's objection to the line of questions, counsel claimed it was vital to defendant's case to prove the witness' possible motivation to fabricate testimony against defendant. The court disagreed, stating that the line of questioning as to the specifics of the theft investigation was too prejudicial, and sustained the State's objection. Subsequently, counsel cross-examined defendant's son, the alleged victim, concerning the police investigation against his mother and his awareness of "allegations that have been made about your mother with another gentleman." When counsel attempted to elicit testimony from the boy that the child might be taken away from his mother by the Department of Social and Rehabilitation Services if the charges against his mother were found to be truthful, the court again sustained the State's objection.

During the presentation of defendant's evidence, the court refused to allow a witness for defendant to testify about an alleged prostitution ring involving the girlfriend. Defendant took the

stand in his own defense and proceeded to itemize a number of reasons why both the girlfriend and his son would lie about him. Defendant claimed that the girlfriend had lied about his sexual misconduct and coerced their son into lying, because prior to the son's informing the police of the alleged acts, defendant had threatened to leave the girlfriend, taking their two children with him. He told her he would testify about her organization of a prostitution ring and her involvement in a theft of money. Defendant also accused her of committing welfare fraud, and stated that he had informed the Internal Revenue Service of her illicit receipt of certain monies. Finally, defendant claimed that the son had been frightened by the prosecutor into testifying as he did, or that, through some unexplained form of drug inducement, the battered women's home in Rutland had coerced his son into lying about him.

The jury returned a verdict of guilty on the lewd and lascivious conduct charge, but found defendant not guilty on the sexual assault charge. Defendant was sentenced to a term of imprisonment for which he made a motion for release pending his appeal to this Court.

## II.

Defendant contends that his Confrontation Clause rights under both the United States and the Vermont Constitutions[1] were violated because the trial court refused to allow his attorney an adequate opportunity to cross-examine the State's witnesses concerning their motivation to fabricate testimony against him. We disagree.

We begin with the proposition that "wide latitude should be allowed on cross-examination for the purpose of showing who and what the witness is, and that he is unreliable, prejudiced, or biased." *State* v. *Berard*, 132 Vt. 138, 147, 315 A.2d 501, 508, *cert. denied*, 417 U.S. 950 (1974). Cross-examination is vitally important for a defendant "to establish the identity of the witness so

---

[1] Although defendant asserts a violation of his constitutional rights under the Vermont Constitution, he provides no substantive analysis of the Vermont Constitution, nor does he set forth any rationale as to how our analysis of this constitutional claim should differ under the Vermont Constitution in comparison with the federal constitution. Therefore, we decline to apply state constitutional analysis to the issue presented herein. See *State* v. *Maguire*, 146 Vt. 49, 54, 498 A.2d 1028, 1031 (1985).

that the jury can place the witness in his environment, know who he is, and weigh his evidence." *Id.* at 149, 315 A.2d at 509. This is particularly true where "the evidence consists of the testimony of individuals . . . [who might be] motivated by malice, vindictiveness, intolerance, prejudice, or jealousy." *Greene* v. *McElroy*, 360 U.S. 474, 496 (1959). A defendant's ability to probe a witness' motivation is not unlimited, however. "On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based upon concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware* v. *Van Arsdall*, 475 U.S. 673, 679 (1986). See *State* v. *Patnaude*, 140 Vt. 361, 369-70, 438 A.2d 402, 405 (1981); V.R.E. 403.

The instant case involves that category of Confrontation Clause cases exemplified by *Davis* v. *Alaska*, 415 U.S. 308 (1974), in which the opportunity for cross-examination has been restricted by a ruling of the trial court. See generally *Kentucky* v. *Stincer*, ___ U.S.___, ___, 107 S. Ct. 2658, 2662-64 (1987) (discussion of two broad Confrontation Clause categories—i.e., cases involving the admission of out-of-court statements, and cases involving restrictions imposed by law or by the trial court on the scope of cross-examination). Defendant asserts that while counsel was permitted to ask the witnesses whether they were biased, counsel was unable to make a record from which to argue why the witnesses might have been biased or otherwise lacked the degree of impartiality expected of a witness at trial.

The instant case, however, is sufficiently dissimilar on a factual basis so that we do not reach the same result as the Court in *Davis*. In that case, the defendant's counsel was completely foreclosed from questioning the witness about the possible existence of his bias. *Davis*, 415 U.S. at 312-15.[2] In the instant case, counsel was permitted to ask questions of the witnesses as to the existence of police investigations and fears about prosecution or loss of custody. All that the trial court excluded were questions about the details of the investigations, for the court correctly adjudged these questions to be overly prejudicial or irrelevant. The "Con-

---

[2] We note that the trend among the state supreme courts has been to find violations of their state constitution Confrontation Clauses where the trial court totally forecloses defense inquiry as to possible motivation for a witness to fabricate testimony. See, e.g., *Van Arsdall* v. *State*, 524 A.2d 3, 6-7 (Del. 1987).

frontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).

We believe the instant case should be examined in the manner set forth in *United States* v. *Berkowitz*, 662 F.2d 1127 (5th Cir. 1981):

> [O]nce a defendant has been afforded the opportunity for sufficient cross-examination to satisfy the Sixth Amendment guarantee, the [trial] court has discretionary authority to control the scope of further cross-examination. What amount of cross-examination satisfies the Sixth Amendment requirement is not measured by a quantitative test, but rather by a pragmatic, qualitative approach: The defendant must be allowed the opportunity "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness."

*Id.* at 1138 (quoting *Davis*, 415 U.S. at 318) (citations omitted).

■ Employing the approach enunciated in *Berkowitz*, we find that defendant was accorded sufficient opportunity to show the jury possible reasons for the witnesses to fabricate their testimony. On cross-examination, counsel was allowed to bring out the existence of the investigations against the girlfriend and the possible consequences of those investigations, thus showing the jury a possible motivation for the witnesses to fabricate their testimony. What the trial court properly excluded concerned the specifics of the allegations, which were of no relevance to the case against defendant.

Thus, defendant's Confrontation Clause rights were not violated when the court precluded counsel from cross-examining about the potentially lurid details of the investigations pending against the girlfriend. We note that since the court subsequently permitted defendant to testify directly as to the details surrounding the investigations, the testimony defendant sought to elicit eventually did come into evidence.

## III.

Defendant also alleges that the trial court improperly applied V.R.E. 403 in limiting defendant's cross-examination as to the specifics of the charges pending against the girlfriend.[3] V.R.E. 403 states in pertinent part that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." See also State v. Picknell, 142 Vt. 215, 230, 454 A.2d 711, 718 (1982) (similar analysis applied prior to adoption of V.R.E. 403). Before utilizing this balancing test, however, the court must make a threshold inquiry as to whether the evidence is both relevant and probative to the case-in-chief. See 22 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5214, at 264 (1978).

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401. Underlying the issue of relevancy is the question of whether the evidence is probative of the proposition for which it is offered. Reporter's Notes, V.R.E. 401. See generally McCormick on Evidence § 185, at 541-48 (3d ed. 1984). "Thus, evidence which is logically probative in a technical sense may still be irrelevant for the familiar reason that it is of a matter too remote in time or place. In McCormick's words, '[R]elevant evidence, then, is evidence that in some degree advances the inquiry, and thus has probative value.' " Reporter's Notes, V.R.E. 401 (quoting McCormick on Evidence § 185, at 438 (2d ed. 1972)).

In the instant case, the proffered evidence of the details of the investigations concerning the girlfriend fails to advance the inquiry to any discernible extent; its probative value is thus nil. The fact of the existence of the investigations was relevant to the extent that it tended to show motive for the State's witnesses to fabricate their testimony against defendant, but the details of any

---

[3] At oral argument, counsel admitted, after questioning by this Court, that V.R.E. 608(b), limiting proof of specific instances of conduct, would be of no avail in defendant's argument, but failed to elucidate the rationale for its inapplicability. We note that if counsel had attempted to employ V.R.E. 608(b), the trial court would still be required to engage in the V.R.E. 403 balancing test. See Reporter's Notes, V.R.E. 608; Federal Advisory Committee's Note, Fed. R. Evid. 608.

potential charges were irrelevant to the complaint against defendant. Defendant was able to make his point and place the credibility issue before the jury without generating an unnecessary debate about the merits of an unrelated proceeding. Counsel exceeded the outer limits of relevancy (and perhaps common decency) when he attempted to elicit from the then thirteen-year-old victim of the alleged sexual abuse the lurid details of his mother's supposed prostitution ring. Defendant's evidence concerning the girlfriend's involvement in the alleged theft was also irrelevant as well as overly remote since the alleged act occurred more than three years prior to defendant's coming forward with the allegation to the police.

Since we find the proffered evidence irrelevant under V.R.E. 401, V.R.E. 402 requires that it not be admitted into evidence. The trial court, therefore, had no need to employ the balancing test of V.R.E. 403.

Based on the foregoing considerations, we believe the trial court acted properly and within its discretion in excluding the proffered evidence. See *State* v. *Baldwin*, 140 Vt. 619, 620, 442 A.2d 1291, 1292 (1982) (scope of cross-examination determined in the discretion of the trial court and should not be disturbed absent an abuse of that discretion).

*Affirmed. Defendant's motion of July 29, 1987, for release pending disposition of his appeal is denied as moot.*