## State of Vermont v. Michael Roberts

[574 A.2d 1248]

No. 86-308

Present: Allen, C.J., Peck, Gibson, Dooley and Morse,[1] JJ.

Opinion Filed March 9, 1990

---

[1] Justice Morse sat for oral argument but did not participate in the Court's decision.

62

Jeffrey L. Amestoy, Attorney General, and Susan R. Harritt, Assistant Attorney General, Montpelier, and James P. Mongeon, Rutland County State's Attorney, and Marc Brierre, Deputy State's Attorney, Rutland, for Plaintiff-Appellee.

Martin & Paolini, Barre, for Defendant-Appellant.

Allen, C.J. Defendant appeals from his conviction, following trial by jury, of kidnapping in violation of 13 V.S.A. § 2401. We affirm.

On February 23, 1984, 28-year-old Mark Knapp was reported missing by his parents after he had failed to return home the previous night. That evening, police discovered his abandoned car, a Ford station wagon, with the keys in the ignition. Knapp's body was discovered on the following day, lying on the ice at the

bottom of an abandoned quarry. His hands were tied, and subsequent examination revealed four puncture wounds in his back and two on his wrist. A pair of scissors was also discovered in the quarry, and it appeared that the puncture wounds had been inflicted with the scissors prior to Knapp's death. Two sets of fingerprints were found on the interior surfaces of Knapp's automobile, one set attributable to defendant and one set to an individual named Randy Daniels.

On February 29, 1984, Randy Daniels was arrested and charged with Knapp's murder. Defendant was questioned later that evening. Initially, he claimed that he had gone to bed early on the night of February 22 and had stayed home sick the next day. Later, he admitted to having been at the quarry with Daniels on the night in question. Defendant then attempted, unsuccessfully, to strike a deal with the state's attorney regarding the incident.

Daniels was eventually charged with both kidnapping and murder. On May 22, he entered into a plea agreement with the State. Under this agreement, the State dismissed the murder charge without prejudice, and Daniels pleaded nolo contendere to the kidnapping charge and provided statements regarding the incident. Daniels provided two sworn affidavits as well as a sworn deposition. He later was a key witness at defendant's murder trial.

Daniels' account of the events leading to Knapp's death, based on his affidavits, his deposition, and his testimony at defendant's trial, was as follows: Daniels and defendant were walking along a street in Rutland when Knapp drove up, asked for directions, and offered them a drink. Daniels got into the back seat, while defendant sat in the front passenger's seat. The trio purchased beer and cigarettes with money provided by Knapp and then drove around Rutland and the area west of Rutland.

Later, Knapp pulled to the side of a dirt road and parked the car. Defendant and Daniels began a discussion about their need for money, and Knapp explained that he had no more cash. He then gave his wallet to defendant, who examined its contents and gave it to Daniels. Daniels discovered a bank card in the

wallet. Defendant either "helped" or "pushed" Knapp over into the back seat of the car and handed a pair of scissors to Daniels. Defendant then drove to a nearby bank, where Daniels attempted unsuccessfully to use the bank card in the automatic teller machine. Knapp then used the card to withdraw $90 from his account, which he gave to defendant.

Defendant drove to West Rutland with Knapp and Daniels in the back seat, while Daniels again held the scissors. He parked near a quarry and instructed Daniels to tie Knapp's hands. Daniels complied, after handing the scissors back to defendant. Defendant led Knapp to the edge of the quarry, "moved his arm," and Knapp disappeared over the edge.

Defendant and Daniels drove Knapp's car to New York City, bought some food, and began the return trip. They abandoned Knapp's car in Castleton when it ran out of fuel.

On July 3, 1984, defendant was charged with assault and robbery, kidnapping, felony murder, and second degree murder. These four counts were severed on defendant's motion. The information was subsequently amended to charge first-degree murder. Defendant's murder trial lasted five days and ended with a hung jury. The trial judge declared a mistrial.

Defendant was then tried on the kidnapping charge. Daniels, however, asserted his Fifth Amendment right against self-incrimination and refused to testify. The trial judge ruled that Daniels could not properly invoke the Fifth Amendment and ordered him to testify or be held in contempt of court. Daniels, however, remained steadfast in his refusal to testify. The trial judge declared Daniels unavailable pursuant to V.R.E. 804(a)(2) and admitted Daniels' pretrial deposition and trial testimony over the objection of defendant. The judge informed the jury of the witness's unavailability. The judge's law clerk then read Daniels' deposition and testimony into the record. The jury returned a guilty verdict.

Defendant raises four arguments on appeal: (1) that the trial court infringed upon defendant's constitutional right to confront his accusers by admitting Daniels' prior testimony; (2) that the court erred by refusing to instruct the jury to use caution in evaluating the credibility of Daniels' statements read

into the record and by precluding defense counsel's comment thereon; (3) that the court erred by failing to grant a mistrial after a police officer described Daniels as a follower of the defendant; and (4) that the admission of defendant's prior statements regarding his participation in Knapp's homicide placed an impermissible burden on defendant's right to testify on his own behalf. We reject each of these claims and affirm.

## I.

The transcripts of Daniels' deposition and testimony at the murder trial meet the definition of hearsay in our Rules of Evidence. V.R.E. 801(c). Under V.R.E. 804(b)(1) a trial court may admit the prior testimony of a declarant who is unavailable at trial.[2] The "unavailability" of a witness, however, ultimately raises "a constitutional question rather than one of the interpretation of statutorily created rules of evidence." *State v. Carroll*, 147 Vt. 108, 111, 513 A.2d 1159, 1160 (1986). In *Carroll*, we stated:

> The hearsay rules and the confrontation clause . . . are designed to protect similar values. *California v. Greene*, 399 U.S. 149, 155 (1970). However, the congruence is not exact, and a statement which might be admissible under the rules [of evidence] must still be subject to a more rigorous constitutional scrutiny. This is especially true of the rules' use of the term "unavailable," for the interpretation of that term determines when the proponent of a witness is excused from having to ensure that the witness is present at trial, which goes to the heart of the confrontation clause.

*Id.* at 111, 513 A.2d at 1160–61.

The Sixth Amendment of the United States Constitution states in relevant part: "In all criminal prosecutions, the

---

[2] V.R.E. 804(b)(1) provides:
   The following [is] not excluded by the hearsay rule if the declarant is unavailable as a witness: . . . Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."[3] The United States Supreme Court has interpreted the confrontation clause as providing "two types of protections for a criminal defendant: the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). This interpretation reflects the understanding that "'the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.'" *Carroll*, 147 Vt. at 111, 513 A.2d at 1161 (quoting *Pointer v. Texas*, 380 U.S. 400, 405 (1965)).

The rights conferred by the Sixth Amendment, however, are not absolute, and at times must yield to other important interests. *Coy v. Iowa*, 487 U.S. 1012, 1019–20 (1988). Both the United States Supreme Court and this Court have therefore recognized an exception to the confrontation requirement when an unavailable witness has given testimony at a prior proceeding. See *Barber v. Page*, 390 U.S. 719, 722 (1968); *State v. Sprague*, 144 Vt. 385, 391, 479 A.2d 128, 131 (1984).

■■ In order to fall within this prior testimony exception, the proponent of the hearsay evidence must meet the rigors of a two-part threshold inquiry. The proponent must: (1) establish the unavailability of the declarant; and (2) satisfy the court that the proffered testimony possesses certain "indicia of reliability" that provide a satisfactory basis for evaluating the truth of the prior statement. *Carroll*, 147 Vt. at 112, 513 A.2d at 1161. While this general statement of the rule speaks in terms of the unavailability of the declarant, the critical factor is the unavailability of his live testimony. E. Cleary, McCormick on Evidence § 253, at 753–54 (3d ed. 1984) [hereinafter McCormick]. Thus, a declarant physically present at trial may none-

---

[3] The Sixth Amendment applies to the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 405 (1965). The protection provided the accused by the Vermont confrontation clause contained in Chapter I, Article 10 is no greater in scope than that afforded by the Sixth Amendment to the federal constitution. *State v. Sprague*, 144 Vt. 385, 390 n.2, 479 A.2d 128, 131 n.2 (1984). Therefore, no separate analysis of Article 10 is required.

theless qualify as unavailable by refusing to testify despite a court order to do so. V.R.E. 804(a)(2).

■ ■ Defendant contends that the State could have procured the testimony of the witness by offering him use immunity from future prosecutions. In essence, defendant argues that he has a general Sixth Amendment right to demand that the State either grant immunity to witnesses of its choosing or dismiss the charges against them. The power to grant a witness immunity lies exclusively within the discretion of the attorney general and the state's attorneys. *State v. Hamlin*, 146 Vt. 97, 107, 499 A.2d 45, 52 (1985).[4] No constitutional obligation exists on the part of the State to confer such immunity. See *United States v. Lang*, 589 F.2d 92, 95–96 (2d Cir. 1978) (U.S. attorney need not grant immunity to witness who invoked his Fifth Amendment privilege; therefore, unavailable witness's statement against penal interest was admissible); *United States v. Herman*, 589 F.2d 1191, 1199–1200 (3d Cir. 1978) (absent threats and intimidation of defense witness by government, there is no general Sixth Amendment right to demand witness immunity); *Earl v. United States*, 361 F.2d 531, 534 (D.C. Cir. 1966) (no obligation to grant immunity where government had previously dismissed certain pending charges against witness and accepted guilty plea in another criminal transaction), *cert. denied*, 388 U.S. 921–22 (1967).

The trial court determined: that Daniels had no Fifth Amendment privilege with respect to the kidnapping charge, to which he had pled nolo contendere; that he was in compliance with the plea agreement and therefore did not face reinstatement of the conditionally dismissed murder charge; and that the privilege against self-incrimination does not protect inconsistent or even perjurious statements. The court ordered Daniels to testify and, upon his refusal, declared him unavailable within the

---

[4] In *Hamlin*, it was unnecessary to decide whether the court could order the State to grant immunity to a witness where the prosecutor deliberately refused to do so in order to distort the judicial fact-finding process, because the facts did not indicate that such was the case. *Hamlin*, 146 Vt. at 107–08, 499 A.2d at 52–53. Nothing suggests conduct of this nature in the instant case. Therefore, the question reserved in *Hamlin* remains open.

meaning of V.R.E. 804(a)(2).[5] Defendant contends that, even if Daniels were unavailable, his deposition and trial testimony fail to exhibit the necessary indicia of reliability upon which their admissibility depend. Defendant argues that: he lacked an effective opportunity and similar motive to develop Daniels' former testimony; the testimony is inherently untrustworthy because Daniels was an accomplice to the crime; and the testimony is untrustworthy as a matter of law because the jury in the murder trial failed to convict defendant after hearing the same evidence. We disagree.

■ With respect to testimony given outside of a trial setting, the United States Supreme Court has outlined the indicia that impart the reliability necessary to justify admission. Essentially, the declarant must testify in circumstances that "closely approximat[e] those that surround the typical trial." *California v. Green*, 399 U.S. at 165. For a deposition, these circumstances include: "the declarant testified under oath"; the testimony was recorded and transcribed; and "the defendant had the opportunity to cross-examine the declarant." *Sprague*, 144 Vt. at 391, 479 A.2d at 132 (pretrial suppression hearing testimony admissible) (citing *California v. Green*, 399 U.S. at 165).

■ The April 30, 1984 deposition of Daniels satisfies all of these requirements. Daniels' sworn testimony was recorded and transcribed. Defendant was represented by counsel. At the time of the deposition, defendant faced four charges, including kidnapping. Therefore, he had an opportunity to cross-examine Daniels on the kidnapping charges. Defendant, in fact, took advantage of this opportunity and cross-examined Daniels. The possibility that defense counsel would have cross-examined Daniels differently or more vigorously had he known that Dan-

---

[5] Defendant contends that Daniels properly invoked his privilege against self-incrimination. A court may rule that a witness is exempt from testifying on the ground of privilege pursuant to V.R.E. 804(a)(1). We need not determine the propriety of the trial court's ruling because regardless of whether Daniels' unavailability rests on V.R.E. 804(a)(1) or (2), the State had no obligation to grant the witness immunity.

iels would become unavailable does not taint the reliability of the deposition testimony for Sixth Amendment purposes.

The admissibility of Daniels' murder-trial testimony turns on whether defendant had a meaningful opportunity to cross-examine the witness. Defendant contends that he lacked the requisite motivation at the murder trial to cross-examine Daniels with respect to the kidnapping because the court had severed the four charges by the time Daniels testified in the murder trial. Therefore, defendant claims he purposely avoided challenging Daniels' statements that implicated defendant in the kidnapping.

■■ ■ In view of the realities of the situation, the opportunity to cross-examine must be full, substantial, and meaningful. *Sprague*, 144 Vt. at 388, 479 A.2d at 130. Thus, "the issues in the first proceeding and hence the purpose for which the testimony was there offered, must have been such that the [defendant] had an adequate motive for testing on cross-examination the credibility of the testimony now offered." McCormick § 257, at 768. In criminal cases, courts usually find an adequate cross-examination motive existed if the two indictments upon which testimony is offered arise from the same transaction. *Id.*; see, e.g., *People v. Ogen*, 168 Cal. App. 3d 611, 616–17, 215 Cal. Rptr. 16, 19 (1985) (unavailable witness's testimony from earlier prosecution for kidnapping and rape admissible in murder trial, regardless of specific defenses involved, because the testimony in both cases was adverse to defendant's claim of innocence, and defendant's primary motive was to undermine the witness's credibility and exploit weaknesses in her testimony bearing on defendant's credibility); *People v. Prince*, 106 A.D.2d 521, 522, 483 N.Y.S.2d 57, 58 (1984), *aff'd*, 66 N.Y.2d 935, 489 N.E.2d 766, 498 N.Y.S.2d 797 (1985) (unavailable witness's testimony taken at a preliminary hearing admissible in subsequent trial on related, but separate, crime). Here, the same series of events spawned both the murder and kidnapping charges. Both prosecutions depended in large measure on the testimony and hence the credibility of Daniels, an admitted accomplice to the crimes. Therefore, defendant had ample motive to cross-examine Daniels at the murder trial.

While our inquiry focuses on opportunity, we again note that the record indicates that defendant recognized and seized the chance to cross-examine Daniels' version of many of the events of February 22, 1984, including those bearing on the kidnapping charge. In a chambers conference, defense counsel echoed this assessment and described the murder trial as "the case where we effectively and vigorously cross-examined Randy Daniels." Defense counsel questioned Daniels on whether he or defendant demanded money from Knapp, whether Knapp volunteered the bank card that prompted the trip to the automatic teller machine, whether Knapp ever tried to leave the car, the origin of the scissors and whether defendant or Daniels held them on Knapp, and the binding of Knapp's hands. In addition, defense counsel probed the circumstances of Daniels' plea bargain and the conditional dismissal of the murder charge. Daniels admitted on cross-examination that he had initially lied to the police about his involvement, but denied that he would lie to avoid a murder charge.

We reject the contentions that a court must regard accomplice testimony as inherently unreliable and that a mistrial in the first trial compels the testimony's exclusion in subsequent prosecutions. Accomplice testimony represents admissible evidence regardless of the existence of any other corroboration. *State v. Briggs*, 152 Vt. 531, 539, 568 A.2d 779, 783 (1989). This rule holds true even where "an accomplice . . . testifies against a confederate in the hope of personal advantage." *State v. Crepeault*, 126 Vt. 338, 340, 229 A.2d 245, 246, *cert. denied*, 389 U.S. 915 (1967). Neither does the possibility that a jury considering a different charge may not have found the testimony credible compel its exclusion in a subsequent case. Defendant's arguments run to the weight of Daniels' testimony rather than its competence.

In essence, defendant asks this Court to undertake a particularized search for indicia of reliability and points to specific aspects of Daniels' testimony that render it untrustworthy. The United States Supreme Court rejected a similar argument in *Ohio v. Roberts*, where the defendant claimed that a witness had every reason at a pretrial hearing to lie to avoid prosecu-

tion. *Roberts*, 448 U.S. 56, 72 (1980). The Supreme Court found the necessary "guarantees of trustworthiness in the accouterments of the preliminary hearing itself" and declined to examine the inherent reliability or unreliability of the witness or her story. *Id.* at 73. We likewise find sufficient guarantees of trustworthiness for Sixth Amendment purposes in the accouterments of the murder trial itself and the ample motivation it provided for defendant to cross-examine the witness.

## II.

Defendant next claims that the trial court erred in its charge to the jury regarding the testimony of Daniels. In that portion of the charge complained of, the trial court instructed the jury:

> Because certain witnesses are declared legally unavailable, transcripts of some previous testimony given at a pretrial deposition and at an earlier trial have been read into evidence at this trial. You should give this testimony the same consideration as you would to the testimony of the witnesses who have testified here before you and in person. You should make no inference for or against either party by reason of the fact that these witnesses were declared unavailable.

"A claimed error in the jury instructions can be raised on appeal only if, after the delivery of the charge, the aggrieved party made a specific objection, including a clear statement of the matter to which he objects and the grounds of the objection." *State v. Lettieri*, 149 Vt. 340, 342, 543 A.2d 683, 685 (1988).

The court refused defendant's written request to instruct the jury:

> In evaluating [Daniels'] previous testimony, you should understand that the questions asked, or not asked, by the lawyers at those hearings would not necessarily be the same as would have been asked had the witness been available for questioning at this trial. You should understand that differing issues may have been of concern in those previous proceedings, which may have influenced the questions asked, or not asked, of the witness.

█ Defendant, however, objects on different grounds on appeal. Defendant argues that he was entitled to an instruction that cautioned the jury, when evaluating the credibility of Daniels' testimony, not to substitute the demeanor of the law clerk who read the testimony for that of Daniels. The rule that requires a party to raise a specific objection after the delivery of the charge serves to "afford the trial court an opportunity to correct any error or oversight it might have made in the instructions." *Id.* at 342-43, 543 A.2d at 685. Defendant's written request did not sufficiently apprise the court of the instruction defendant claims as his due on appeal, nor did defendant object specifically after the court charged the jury on the grounds he now asserts. See V.R.Cr.P. 30. Therefore, we will not consider this claim of error on appeal. *State v. Hicks*, 148 Vt. 459, 464, 535 A.2d 776, 778 (1987).

The trial court also precluded defense counsel from commenting in his closing argument that the jury should not ascribe the demeanor of the law clerk to Daniels and thereby give the testimony merit that it otherwise lacked. In essence, defendant claims the court's restriction of his closing argument violated his Sixth Amendment right to make a proper argument on the evidence and the applicable law in his favor. We disagree.

The trial court sought to prevent defense counsel from in effect telling the jury that they should not consider Daniels' testimony because he was unavailable or from asking the jury to infer that he could not be believed because of his absence. The court ruled that defense counsel could ask the jury "to consider the quality of his testimony based upon his answers," but precluded the suggestion of any inference regarding the physical demeanor of Daniels, a witness who never physically appeared in court to testify. As a result, defense counsel told the jury to "judge [Daniels'] credibility as best you can by the quality of his answers."

█ █ The trial court properly restrained defense counsel's closing argument. Counsel may comment only on the evidence of the case and the inferences properly drawn from it. *State v. Hemingway*, 148 Vt. 90, 91, 528 A.2d 746, 747–48 (1987). Daniels did not testify in person before the jury. Hence, his

physical demeanor did not constitute relevant, probative evidence upon which defense counsel could remark or urge the jury to make speculative inferences. See *State v. Benneig*, 146 Vt. 391, 397, 505 A.2d 1192, 1196 (1985) (where defense counsel sought to argue witness's exercise of privilege against self-incrimination raised an inference of guilt, trial court properly excluded comment because silence was simply not relevant evidence). Because Daniels' physical demeanor was not relevant evidence, we need not reach defendant's constitutional claim. *Id.*

## III.

Defendant next argues that an unresponsive comment in the testimony of a police detective infected the trial with such prejudice as to compel the grant of a mistrial. The State called to the stand a Vermont State Police detective who investigated the death of Knapp. The following exchange took place on direct examination:

Q. Based on your investigation, did you come to a conclusion of whether [Daniels and defendant] were friends?

A. Yes, very close friends. It wasn't so much that they were companions as it was that they were real close friends and Randy was more or less a follower of [defendant].

The trial court sustained defense counsel's prompt objection and instructed the jury to disregard the latter part of the officer's statement.

When a witness gives an unresponsive answer, the appropriate remedy lies within the discretion of the trial judge. *State v. Chambers*, 144 Vt. 377, 381, 477 A.2d 974, 977 (1984). Similarly, motions for mistrial are committed to the sound discretion of the trial court and should not be granted unless the moving party demonstrates prejudice. *State v. White*, 150 Vt. 255, 257, 551 A.2d 1204, 1205 (1988). The trial court's decision will stand on appeal unless the court's discretion was either totally withheld or exercised on grounds clearly untenable or unreasonable. *Id.*

There was strong evidence of defendant's participation in the kidnapping. In addition to Daniels' incriminating testi-

mony, the police found a set of defendant's fingerprints in Knapp's car, and defendant admitted to the police that he was at the quarry with Knapp the night of his death. Absent a showing of intentional wrongdoing by the State, we cannot say the detective's comment substantially prejudiced defendant. With its prompt cautionary instruction, the trial court cured any prejudice defendant may have initially suffered. There was no abuse of discretion.

## IV.

Lastly, defendant asserts that the trial court's failure to exclude defendant's prior statements regarding the homicide placed an impermissible burden on his right to testify in his own behalf. We disagree.

The trial court denied defendant's motion in limine to exclude comments made to a corrections guard in which defendant stated he would stuff the guard through a hole in the ice and seal it up so he wouldn't be found until spring and that way he'd be luckier than "the last guy [who] never made it through the ice." When the trial began, defendant had not decided whether he would testify. After the State rested, the state's attorney received a letter, which he immediately disclosed to the court and defense. The letter stated that, while confined to the Vermont State Hospital for evaluation, defendant confessed Knapp's murder to an inmate. The State indicated its intention to call the inmate to testify if defendant took the stand. Defendant neither objected to this proffer nor made a motion to exclude this evidence. Defense counsel indicated to the court that the letter "tip[ped] the scales" against defendant's testimony and defendant subsequently declined to take the stand. As a result, the State never introduced defendant's statements into evidence.

Defense counsel shoulders the responsibility to exclude objectionable testimony. *State v. Recor*, 150 Vt. 40, 46, 549 A.2d 1382, 1387 (1988). Defendant did not object or request that the court exclude any testimony by the inmate and therefore cannot say that the court impermissibly burdened his right to testify. Defendant thereby also failed to preserve this issue for

appeal. We cannot say that the trial court committed plain error by not making a sua sponte ruling at this preliminary stage that any evidence of defendant's statement to the inmate was inadmissible.

We also find no error in the court's denial of defendant's motion in limine regarding defendant's statement to the correction' officer. Defendant argues on appeal that this statement represents a specific instance of conduct inadmissible under V.R.E. 608(b). The trial court ruled properly on the motion because other permissible uses for the testimony existed. See *State v. Beshaw*, 136 Vt. 311, 313, 388 A.2d 381, 382 (1978) (with or without a severance, the fact that certain evidence from the course of events in connection with all the charges relates to the commission of a crime other than the one charged does not make the evidence inadmissible if it is otherwise admissible). Rule 608(b) prohibits the admission of specific incidents of conduct to prove a witness's "capacity to lie," but does not bar the introduction of evidence to contradict a witness's testimony. *United States v. Vaglica*, 720 F.2d 388, 393–94 (5th Cir. 1983). The State could have also used the rebuttal evidence, not to attack credibility, but to establish one of the permissible areas of proof enumerated in V.R.E. 404(b). See *State v. Bevins*, 146 Vt. 129, 134–35, 498 A.2d 1035, 1038–39 (1985) (rebuttal evidence admissible to establish identity); McCormick § 190, at 558–59 (permissible purposes under Fed. R. Evid. 404(b) include to "complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings").

Evidentiary rulings are not subject to revision "unless it clearly and affirmatively appears that the trial court withheld or abused its discretion." *State v. Catsam*, 148 Vt. 366, 383, 534 A.2d 184, 195 (1987). Daniels' deposition and former testimony contained evidence regarding the death of Knapp. The court protected against the danger of unfair prejudice by limiting the use of this evidence. Defendant's statement to the corrections guard could have been relevant and not unduly prejudicial. The trial court did not abuse its discretion by denying defendant's motion in limine and therefore did not place an

impermissible burden on defendant's right to testify in his own behalf.

*Affirmed.*