669 A.2d 550 (1995)
STATE of Vermont
v.
Jerome WASHINGTON.
No. 93-410.
Supreme Court of Vermont.
October 24, 1995.
Certiorari Denied March 18, 1996.
*551 Before ALLEN, C.J., and GIBSON, DOOLEY, MORSE and JOHNSON, JJ.
Certiorari Denied March 18, 1996. See 116 S.Ct. 1277.

ENTRY ORDER
Defendant appeals his jury conviction of murder in the first degree, attempted murder, aggravated assault, and his sentence of life imprisonment. Defendant raises four issues: (1) that the trial court violated his right to confrontation; (2) that the trial court erred by preventing cross-examination of the State's key witness with character evidence; and by (3) preventing defendant from arguing in closing that inferences favorable to defendant could be drawn from the prosecutor's failure to produce evidence that defendant was involved in drug dealing, and (4) that the court improperly sentenced defendant for committing a predatory killing, under 13 V.S.A. § 2303. We affirm.
On May 22, 1992, defendant, his brother Jacob Washington, Chance Marden, and others were subjects of search warrants executed by the Burlington Police Department. During the search, the police seized drugs, drug paraphernalia, and guns at defendant's apartment, which he shared with his brother Jacob. As a result of the investigation and searches, Jacob Washington was arraigned and held in custody on federal charges. Defendant, Marden, and others were issued citations to appear in state court. Defendant was cited for distribution of cocaine.
On the night of May 23, 1992, Chance Marden, his girlfriend Melissa Wells, and his roommate Matthew Petrie were eating a late dinner at Marden's apartment. Marden, the principal witness at trial, described what happened. According to Marden, defendant arrived at approximately 9:00 P.M. and stayed for about an hour. During this time, defendant asked if Marden had provided the police with the information that led to the search warrants. Sometime during this conversation, when Marden moved to take his dishes into the kitchen, he heard a "pop" and a scream from Melissa. Melissa Wells had been shot in the head. Marden then saw defendant about five feet away with a gun pointed at Marden's forehead. Marden fell backwards and defendant fired the gun twice, hitting Marden in the forearm. Defendant fired a shot into the other side of Wells's head, and then fired the remaining three shots into Petrie. Marden smashed through his bedroom window, jumped outside, ran to find help, and called 911. Meanwhile, defendant left the house and rode away on his bicycle. The police apprehended defendant after a short chase.
Melissa Wells died from her injuries. Matthew Petrie suffered gunshot wounds to his head, face, neck, and left forearm. Petrie could recall only that he was in the room with Marden, Wells, and defendant.
The State's theory at trial was that defendant believed Marden had given the police evidence against defendant's brother Jacob, and that defendant went to Marden's apartment to murder him. The defense contended that Marden was actually covering up for a more influential member of their drug ring by falsely accusing defendant of the murder.

I.
Defendant's first contention on appeal is that the trial court erred when it denied admission of a videotape of Marden's deposition. According to defendant, Marden's testimony at trial was overly emotional, whereas at the deposition he was "as cool as a cucumber" when describing the murder. Defendant claimed that the difference in Marden's demeanor would be probative of Marden's credibility as a witness, and that the jury should have been allowed to see it. The trial court denied the motion, stating that Marden's testimony at trial was not emotional, and that viewing the videotape might confuse the jury. Defendant now claims that this ruling violated defendant's constitutional right to confrontation.
According to defendant, the trial court's ruling had an unfair prejudicial effect on the jury's deliberations because they were deprived of crucial demeanor evidence. The initial question in examining a confrontation clause claim is whether defendant was prohibited from engaging in otherwise appropriate cross-examination. State v. French, 152 Vt. 72, 79, 564 A.2d 1058, 1062 (1989). Cross-examination may be limited. "The `Confrontation Clause guarantees an opportunity *552 for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" State v. Raymond, 148 Vt. 617, 620-21, 538 A.2d 164, 166 (1987) (quoting Delaware v. Fensterer, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985) (emphasis in original)). Additionally, the trial court retains a wide degree of discretion to impose reasonable limits on cross-examination when there is a risk of "harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Id. at 620, 538 A.2d at 166. The exercise of such discretion does not offend constitutional guarantees such as the confrontation clause. State v. Larose, 150 Vt. 363, 370, 554 A.2d 227, 232 (1988). We limit our review to whether the trial court abused its discretion. State v. Houle, 162 Vt. 41, 42, 642 A.2d 1178, 1179 (1994).
Defendant was given an opportunity to cross-examine Marden, and could have asked Marden about his change in demeanor. Nevertheless, defendant chose not to pursue that line of questioning. Now defendant contends that the trial court denied his right to confront Marden by refusing to admit the videotape. Defendant also contends that the trial court abused its discretion by not viewing the videotaped deposition before ruling on its admissibility. The videotape's relevance hinged on whether Marden's testimony at trial was overly emotional. After hearing why defendant wanted the tape admitted, the trial court ruled that the danger of unfair prejudice outweighed the probative value of the videotape because the court saw little emotion in Marden's trial testimony, and viewing the videotape might confuse the jury. The trial court has discretion to exclude relevant evidence if its probative value is substantially outweighed by the danger of confusing the issues. V.R.E. 403. We find no abuse of discretion.

II.
Defendant next contends that, under V.R.E. 608(b), the trial court should have allowed introduction of a photograph of Marden with a gun and drugs and permitted defendant to cross-examine Marden about his alleged sexual encounter with another woman named Melissa shortly after the murder. Defendant claims that both pieces of evidence should have been admitted because they directly relate to Marden's credibility as a witness. According to defendant, the jury was entitled to know that Marden had been involved with guns and drugs and they should have been able to evaluate his testimony in light of such evidence. Additionally, defendant claimed that he had a recording of Marden boasting about a sexual encounter with another woman named Melissa shortly after the murder and that this evidence indicated that Marden really did not have deep feelings for Melissa as claimed by the State. Defendant wanted to cross-examine Marden about the alleged encounter because it would show that Marden might be likely to lie about the facts of the murder.
The photograph of Marden with a gun and drugs was properly excluded. According to V.R.E. 608(b), extrinsic evidence of prior bad acts may not be used to attack a witness's credibility. A witness may be examined about past conduct that is probative of truthfulness or untruthfulness on cross-examination if the trial court finds that the inquiry would be more probative than prejudicial. See State v. Goodrich, 151 Vt. 367, 376, 564 A.2d 1346, 1352 (1989) (even "`wide latitude' of permissible cross-examination of expert witnesses is qualified by V.R.E. 403"). The trial court did not prohibit defendant from asking Marden whether he had been involved in past instances involving guns and drugs, and the photograph was properly excluded as extrinsic evidence. V.R.E. 608(b).
The court also did not err by prohibiting defendant from asking Marden about sexual encounters. Defendant argues, however, that if the State could use Marden's close relationship with Wells to boost Marden's credibility, then evidence that their relationship was not as close as the State suggested would tend to weaken Marden's credibility. Marden's relationships with other women following the murder has negligible bearing on his credibility as a witness, especially in light of the court's ruling forbidding the State from implying that Marden's *553 relationship with Wells guaranteed his truthfulness. Again, there was no abuse of discretion. See Houle, 162 Vt. at 42, 642 A.2d at 1179.

III.
Defendant was not permitted to argue in closing that the State's failure to introduce evidence directly linking defendant to the alleged drug conspiracy meant that such evidence did not exist. Before trial, defendant had moved to exclude evidence of defendant's prior distribution of narcotics. The court granted the motion in part, limiting the State's presentation of evidence to the existence of a drug conspiracy and to defendant's involvement within that enterprise as it related to his motive of retaliation. During trial, the court instructed the State on numerous occasions to keep evidence of a drug conspiracy to a minimum, in accordance with its prior ruling. The State complied with these instructions and introduced only enough evidence to make a sketch of the drug conspiracy and defendant's role in the transactions. In closing, defendant wanted to argue that because the State's evidence concerning defendant's involvement in the drug conspiracy was insubstantial, the jury could infer that defendant was not involved in the drug conspiracy and hence did not have a motive to kill Marden.
By successfully keeping evidence of his drug activities away from the jury, defendant necessarily barred his own use of any negative inferences that might be drawn from the lack of such evidence. Defendant was properly not allowed to take advantage of a trial posture of his own making. Cf. Woodmansee v. Stoneman, 133 Vt. 449, 458, 344 A.2d 26, 31 (1975) (unfair to allow State to attack credibility of doctor's diagnosis on basis that he examined patient only once where court limited doctor's testimony to single examination even though doctor had treated patient on previous occasions.).

IV.
Defendant's final claim of error is that at sentencing the trial court abused its discretion by finding that defendant had committed a predatory killing. See 13 V.S.A. § 2303(d)(7). He claims that Wells's murder could not have been a predatory murder because she was a mere bystander caught in the fray. Section 2303(a) provides that a trial court may impose a penalty of life imprisonment for a person convicted of first-degree murder if it finds that the aggravating factors outweigh any mitigating factors. Subsection (d) lists the aggravating factors, the relevant portions of which are (d)(6) (the murder involved multiple victims), and (d)(7) (murder was random, predatory or arbitrary in nature). Subsection (e) lists the mitigating factors, the only relevant portion being (e)(1) (defendant has no significant history of prior criminal activity).
While the only mitigating factor was that defendant had no significant history of prior criminal activity, there were a number of aggravating factors. The murder involved multiple victims; though he succeeded in killing only one, defendant attempted to kill three people. Second, the court found that the murder was perfunctory, dispassionate, pitiless, cold blooded, and predatory. Predatory is defined as "showing a disposition to injure or exploit others for one's own gain." Webster's New Collegiate Dictionary 905 (1977). According to the trial court, the murder was predatory because it appeared that defendant killed Wells to prevent her from witnessing his attempted murder of Marden. The court's findings are in accord with the evidence and support the sentence.
Affirmed.