NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 41

No. 24-AP-251

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Andy LaGore | May Term, 2025 |

John Treadwell, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Allison N. Fulcher of Martin, Delaney & Ricci Law Group, Barre, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **EATON, J.** Defendant Andy LaGore appeals his conviction of lewd or lascivious conduct with a child. He argues that his conviction should be reversed and remanded for a new trial because the trial court excluded evidence of his stepdaughter L.F.'s 2016 statements of alleged touching by her biological father. We conclude that the trial court did not abuse its discretion in excluding the 2016 statements for lack of relevance and affirm.

¶ 2. The following evidence regarding the allegations against defendant was presented at trial. In September 2018, L.F., then six years old, was staying in a foster home with her classroom teacher. During a car ride with foster mother, L.F. began describing an event which raised concerns for foster mother as a mandatory reporter. Foster mother began recording a video of L.F. and captured L.F. saying "no one should ever get on top of you . . . or do the nakey rub

thing" and that "he got on top of me and did that." L.F. described that she told her mother about the event, and that her mother had "yelled at daddy for doing that." At bedtime a few days later, foster mother recorded a second video of L.F in which L.F. told foster mother that L.F.'s "[half-brother's] dad—Andy" would "put [L.F.] down" and would "wake her up" and that he "was trying to get on [her] to do the nakey rub, but [she] kept pushing him." L.F. also told foster mother that she told a few people about this conduct, including her mother, step-grandmother, and her biological father, Jordan. When foster mother asked for clarification about who had done the "nakey rub" to her, L.F. identified defendant, "Andy," once again and, after foster mother asked about Jordan, L.F. corrected foster mother that it was "not Jordan, only Andy." Based on these statements, foster mother called the Department for Children and Families and reported that L.F. might have been abused.

¶ 3. Following the report, L.F. was interviewed at the Children's Advocacy Center. During that interview, L.F. stated that "Andy—last night once woke me up—put me on the mattress and did what he had to," that she and "Andy" had "done the nakey rub one time, two times" and that she had never "done the nakey rub" with anyone except defendant. Furthermore, L.F. also described that her mother had "caught him doing that" and had "called the cops."

¶ 4. During pretrial motions, defendant moved to introduce evidence that L.F. had made a prior report of sexual misconduct against another person. Specifically, in 2016 L.F.—then four years old—was interviewed by the Children's Advocacy Center concerning a separate incident involving her biological father, Jordan. L.F.'s mother initiated the interview by calling the police to report concerning statements that L.F. had made to her grandmother. During the 2016 interview, L.F. stated that "Jordan touched my nakey" and that "[he] touched my butt too, when I was pooping." She described that the event took place in the bathroom and that she was "gonna go poop" at the time. L.F. stated that her pants and underpants were down but that Jordan was wearing his clothes and that when she had told Jordan "no," he had said "yes." Following that interview,

2

the State decided not to charge L.F.'s biological father with any offense because it concluded that there was no reason to believe that the touching that L.F. described was sexual in nature, and that, instead, it was related to toileting and toilet training.

¶ 5. In his motion, defendant argued that L.F.'s 2016 statements were admissible as a false claim of sexual misconduct and that his Sixth Amendment right to confront adverse witnesses compelled introduction of the evidence. Defendant asserted that he would use the 2016 statements to demonstrate that L.F. made similar complaints against another person, and that person, not defendant, may therefore have been the one who engaged in the lewd or lascivious conduct that L.F. described in 2018.

¶ 6. The trial court denied defendant's motion. It concluded that the 2016 statements were inadmissible because defendant failed to demonstrate that L.F.'s statements concerning her biological father's unwanted touching were false. See 13 V.S.A. § 3255(a)(3)(C) (providing where evidence of prior sexual conduct "bears on the credibility of the complaining witness" court may admit "evidence of specific instances of the complaining witness' past false allegations of [sexual assault]"). Furthermore, it stated that "there is no evidence . . . that L.F. is confused as to the identities of the defendant and her biological father." The court went on: "[t]he fact that L.F. may have been offended and bothered by another person's unwanted touching in her genital area on another occasion is not evidence that she was confused in her identification of the defendant in this case." It concluded that the 2016 statements were "not relevant, and the defendant [had] no right to 'confront' her with evidence of that prior event."

¶ 7. At trial, defendant was convicted of lewd or lascivious conduct with a child. This appeal followed. On appeal, defendant makes extensive arguments concerning his right to a fair opportunity to defend against the State's accusations. See Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." (quotation omitted)). His arguments center on his constitutional rights both

3

under the Sixth Amendment of the U.S. Constitution and Chapter 1, Article 10 of the Vermont Constitution. See Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (stating U.S. Constitution, including Sixth Amendment, "guarantees criminal defendants a meaningful opportunity to present a complete defense" (quotation omitted)); State v. Roberts, 154 Vt. 59, 66 n.3, 574 A.2d 1248, 1250 n.3 (1990) ("The protection provided the accused by the Vermont confrontation clause contained in Chapter I, Article 10 is no greater in scope than that afforded by the Sixth Amendment to the federal constitution."). In essence, he opines that because this was a sexual-abuse case, which relied heavily on L.F.'s credibility, "[e]vidence that L.F. was conflating events and perpetrators was a critical component" of his constitutional right to confront his accuser.[*]

¶ 8. Defendant's arguments, however, circumvent a required and critical part of the evidentiary framework. As we have frequently outlined, the Confrontation Clause of the Sixth Amendment "applies only to evidence that is relevant and otherwise admissible under the rules of evidence" and, therefore, "[i]n general, exclusion of evidence that is not admissible does not violate the Sixth Amendment." State v. Forty, 2009 VT 118, ¶ 24, 187 Vt. 79, 989 A.2d 509; see also State v. Godfrey, 2010 VT 29, ¶ 32, 187 Vt. 495, 996 A.2d 237 ("[T]he Confrontation Clause does not allow a defendant to use cross-examination to introduce inadmissible evidence."); State v. Corliss, 168 Vt. 333, 337, 721 A.2d 438, 441-42 (1998) ("A defendant has a right to present exculpatory evidence to aid his defense and to confront witnesses brought against him," however, "[a] defendant does not have the right to introduce any and all evidence that he deems will aid his

---

[*] Below, defendant argued that L.F.'s 2016 statements were admissible under Vermont's Rape Shield statute. 13 V.S.A. § 3255(a)(3)(C) (stating generally that "[e]vidence of prior sexual conduct of the complaining witness shall not be admitted," however, "where it bears on the credibility of the complaining witness or it is material to a fact at issue and its probative value outweighs its private character, the court may admit . . . evidence of specific instances of the complaining witness' past false allegations of [sexual assault]"). On appeal, defendant now argues that "this is not a Rape Shield issue; it is about the right to present a defense." Consequently, we do not review the trial court's conclusion that the evidence cannot be admitted under § 3255.

4

defense," and instead, the proffered evidence "must be relevant and otherwise admissible under the rules of evidence.").

¶ 9. Therefore, we begin our analysis with the threshold question of whether the trial court appropriately determined that the evidence was not relevant and, therefore, inadmissible. "[T]rial courts enjoy broad discretion in the admission or exclusion of evidence, and [this Court] review[s] those decisions for an abuse of that discretion." Brown v. State, 2018 VT 1, ¶ 20, 206 Vt. 394, 182 A.3d 597. "We will find an abuse of discretion only upon a showing that the court's discretion was either withheld or exercised on clearly unreasonable grounds." State v. Bergquist, 2019 VT 17, ¶ 22, 210 Vt. 102, 211 A.3d 946 (quotation omitted). Further, "it is ordinarily defendant's burden to prove that the trial court erred in excluding evidence." State v. Larkin, 2018 VT 16, ¶ 21, 206 Vt. 535, 183 A.3d 589. Such is the case here.

¶ 10. The Vermont Rules of Evidence define "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." V.R.E. 401. "All relevant evidence is admissible, except as limited by constitutional requirements or as otherwise provided by statute or by [the Vermont Rules of Evidence] or by other rules prescribed by the Supreme Court." V.R.E. 402. However, "[e]vidence which is not relevant is not admissible." V.R.E. 402. Importantly, whether a piece of evidence is relevant requires consideration of whether and how it is linked to the proposition for which the evidence is offered. State v. Raymond, 148 Vt. 617, 622, 538 A.2d 164, 167 (1987). " '[E]vidence which is logically probative in a technical sense may still be irrelevant for the familiar reason that it is of a matter too remote in time or place.' " Id. (quoting Reporter's Notes, V.R.E. 401). Consequently, "whether the evidence has any tendency to establish (or refute) the proposition . . . is a question for the trial judge to determine on the basis not only of strict logic but of common sense and experience." Reporter's Notes, V.R.E. 401. Here, defendant sought to introduce L.F.'s 2016 statements about her biological father

5

because defendant contended that it was relevant to show she was confused about the identity of the 2018 perpetrator. As outlined in detail below, the trial court acted within its discretion in concluding that the 2016 statements did not demonstrate any confusion by L.F. as to the identity of the 2018 perpetrator and were therefore not relevant.

¶ 11. Defendant first contends that foster mother's interview with police demonstrates that L.F. confused the two men. He points out that in the interview, foster mother "discusses L.F. telling her about being touched inappropriately by both Andy and Jordan and being confused about when it actually happened." To be sure, the interview demonstrates that foster mother confused defendant with Jordan. For example, foster mother combined the two men's names by referring to "Jordan LaGore" and she stated that L.F.'s biological father was Jordan but shortly thereafter said "I believe Jordan is the stepdad." In fact, at multiple points in the interview foster mother confessed that "it's a little hard for me to remember unfortunately because it was a while ago" and, specifically described that she "get[s] confused on the two [men's] names." However, evidence of foster mother's confusion concerning which man was L.F.'s stepfather and which was L.F.'s biological father does not constitute confusion on L.F.'s part between the two men or concerning the identity of the perpetrator. As the trial court aptly articulated, "[t]he adults surrounding L.F. were at times confused by the number of her family members and the complexity of her living arrangements, but there is no evidence that L.F. was ever confused about any of that." The record of the interview supports the trial court's determination that foster mother's confusion did not demonstrate confusion by L.F. regarding the identity of the 2018 perpetrator.

¶ 12. Next, defendant highlights L.F.'s inability to accurately describe either when the event occurred or her age at the time of the event. Defendant points out that "L.F. said that Andy did the 'nakey rub' last night" but, at the time the video was taken, "L.F. was living in the foster home, and [defendant] had already moved out of her mother's house." Similarly, defendant points to L.F.'s inability to accurately identify her age at the time of the 2018 assault—saying that she

6

was "four"—and he points out that "notably, L.F. happened to be four when the 2016 allegations were made." However, the trial court could reasonably conclude that L.F.'s confusion in general about when the assault occurred or her age at the time of the assault was not evidence of being confused about the <u>identity</u> of the perpetrator of that assault—the proposition for which defendant sought to introduce the evidence. Therefore, the trial court's refusal to admit the 2016 statements was not "clearly untenable" in light of its conclusion that there was no evidence of confusion concerning L.F.'s ability to identify the perpetrator. See Reporters Notes, V.R.E. 401 ("[W]hether the evidence has any tendency to establish (or refute) the proposition . . . is a question for the trial judge to determine on the basis not only of strict logic but of common sense and experience.").

¶ 13. Defendant also highlights that L.F. used the term "nakey" in both 2016 and 2018. He points out that L.F. "told her grandmother in 2016, that Jordan touched her 'nakey' and that she needed to touch his" and that in her 2018 interview, L.F. once again used the term "nakey," saying that "Andy did the 'nakey rub.' " Considering that L.F.'s statements in 2016 and 2018 both involve descriptions of genitals, it is unsurprising that L.F. would use the same term in both statements. Thus, L.F.'s use of the term "nakey" to describe genitals on two separate occasions does not make the trial court's conclusion that the 2016 statements are not relevant "clearly unreasonable." See <u>Raymond</u>, 148 Vt. at 622, 538 A.2d at 167 (explaining evidence which is logically probative may be irrelevant because relates to matter too remote).

¶ 14. Finally, defendant points out that in 2018 L.F. described that her mother saw the event and called the police. However, other testimony revealed that L.F.'s mother "never saw [defendant] doing anything sexual with L.F. and never called the police." Instead, L.F.'s mother "call[ed] the police back in 2016, when L.F. claimed that her father, Jordan, touched her 'nakey.' " Notably, however, L.F.'s mother said she had not witnessed either event. Furthermore, defendant's summary of L.F.'s statement omits L.F.'s next erroneous statement that, after her mother had called the police, the perpetrator "[has] been in jail for two days" but was now "out."

7

L.F.'s confusion about whether her mother witnessed the event, her mother's subsequent actions, and the consequence for the perpetrator is not evidence of L.F. being confused about the identity of the perpetrator. As the court reasoned in a response to separate motions under Vermont Rules of Evidence 804a and 807, "[a] mistaken and hopeful belief about her parent does not, in the court's view, make her disclosures about the defendant's conduct less credible or clear." The trial court was within its discretion—and it was not clearly erroneous—to conclude that the 2016 event was not evidence of L.F.'s confusion about the identity of the perpetrator concerning the events of 2018.

¶ 15. We emphasize that the trial court did not restrict defendant's capacity to demonstrate L.F.'s confusion regarding the many inconsistencies that he points out in his brief. Notably, in his closing argument, defendant highlighted for the jury: that L.F.'s statements that she had informed multiple people about the event were "not true" based on testimony from those individuals, that L.F.'s statement that the event had occurred "last night" was "not true" because L.F. "ha[d] not been anywhere near [defendant] in months," and that L.F.'s description that "in the morning, Mommy caught us, called the police, the police came, Andy went to jail for two days" was "one hundred percent false." Defendant was able to make his point and place the credibility issue before the jury. He was restricted, however, from introducing evidence of L.F.'s 2016 irrelevant statements, because the trial court focused on defendant's specific proposition that L.F. was misidentifying defendant. See Raymond, 148 Vt. at 622, 538 at 167 ("Underlying the issue of relevancy is the question of whether the evidence is probative of the proposition for which it is offered.")

¶ 16. Defendant has not met his burden to "prove that the trial court erred in excluding evidence." Larkin, 2018 VT 16, ¶ 21. The trial court was within its discretion to conclude that "[t]he fact that L.F. may have been offended and bothered by another person's unwanted touching in her genital area on another occasion is not evidence that she was confused in her identification

8

of defendant." The trial court's engagement with and consideration of the evidence, its application of common sense, and its conclusion that the 2016 statements were irrelevant because they did not demonstrate confusion about the identity of the 2018 perpetrator does not evince an abuse of discretion. Even if this Court would have decided the issue differently, we conclude that the trial court's discretion was not withheld or made on clearly unreasonable grounds. See Reporter's Notes, V.R.E. 401 ("Whether [evidence is relevant] is a question for the trial judge to determine on the basis not only of strict logic but of common sense and experience."); Bergquist, 2019 VT 17, ¶ 22 ("We will find an abuse of discretion only upon a showing that the court's discretion was either withheld or exercised on clearly unreasonable grounds.").

¶ 17. Because we hold that the trial court did not abuse its discretion when it concluded that L.F.'s 2016 statements were irrelevant and, therefore, inadmissible, we do not reach defendant's arguments that his constitutional rights were violated. As stated above, the Sixth Amendment "applies only to evidence that is relevant and otherwise admissible under the rules of evidence" and, therefore, "exclusion of evidence that is not admissible does not violate the Sixth Amendment." Forty, 2009 VT 118, ¶ 24; see also Roberts, 154 Vt. at 66 n.3, 574 A.2d at 1250 n. 3 ("The protection provided the accused by the Vermont confrontation clause contained in Chapter I, Article 10 is no greater in scope than that afforded by the Sixth Amendment to the federal constitution.").

Affirmed.

FOR THE COURT:

_____
Associate Justice

9