¶ 29. I am authorized to state that Justice Johnson joins in this dissent.

2004 VT 54

**STATE of Vermont v. Dennis MALSHUK, II**

[857 A.2d 282]

No. 03-243

¶ 1. June 9, 2004. Defendant appeals from his conviction for violating an abuse prevention order by following his ex-girlfriend. Defendant asserts that the Orleans District Court erred by (1) violating "the law of the case" by changing its definition of "following" from the first trial which resulted in a hung jury, (2) instructing the jury that "following" included consciously placing oneself in physical proximity of another, (3) denying a motion of acquittal because of insufficient evidence to support the verdict, and (4) excluding evidence of victim's angry outburst at the defendant. We affirm.

¶ 2. The issues presented in this appeal arose from an encounter in Newport between defendant and his exgirlfriend, Lori Libbey, who had previously obtained an abuse prevention order against defendant, prohibiting him from stalking, following, or coming within 100 feet of her. On the early evening of May 14, 2002, Libbey was picking up her children from day care, when defendant's current girlfriend, Donna Grondin, drove by in defendant's truck. Defendant was a passenger in the vehicle. After taking several minutes to get the children settled in her vehicle, Libbey drove to the Main Street intersection and found that defendant's truck was there. As Libbey pulled up

behind the truck, the truck drove off, with defendant staring out the back window at Libbey.

¶ 3. Libbey stopped at her brother's Newport residence to seek his advice. While she was speaking with her brother outside of his house, defendant and Donna Grondin drove by several times. Libbey's brother advised her to drive home and to call the police if necessary. As she drove home, Libbey saw defendant's truck drive up behind her. She turned onto Route 5, and then pulled off at a rest area to let defendant pass. After waiting for a minute or two, Libbey pulled on to the highway and drove slowly to avoid catching defendant. Nevertheless, she soon came up behind defendant's vehicle, and while following behind him, defendant threw a beer bottle out of the window.

¶ 4. Libbey was stopped by a police officer after Grondin called to report that Libbey was driving with a suspended license. The police officer who responded to the call found Libbey upset and crying. He verified that her license was valid and went on to question defendant, whom he found buying beer at a local store.

¶ 5. Donna Grondin testified that she and defendant were running errands while these events were transpiring, including looking for defendant's grandmother around Newport, buying meat scraps for their dogs, and stopping at a store to make a payment on defendant's account. Grondin also testified that defendant threw the beer bottle out of the window because they often throw bottles to a man who collects them from the side of the road. Grondin further explained that defendant and Libbey were engaged in a custody battle over their child, and that the guardian ad litem had instructed them to call the authorities if they saw Libbey operating without a license. Grondin testified that she had telephoned the authorities from a cell phone to report Libbey because she

and defendant believed that Libbey did not have a valid driver's license. Grondin made two or three calls, reporting Libbey's current location at each respective time.

¶ 6. Defendant was charged with violation of an abuse prevention order, second offense. 13 V.S.A. § 1030(b). In the first trial, the jury was instructed that "following" meant "to go after, to proceed after or to come after, to pursue in an effort to overtake." The trial resulted in a hung jury. At the second trial, upon the State's request, the judge altered the instruction to add that following could also mean, in addition to the previous definition, "consciously maintain physical proximity nearness with another person over a period of time or distance . . . ." The jury found defendant guilty. Defendant moved for acquittal alleging first, that the trial court erred in its definition of "following," and second, that the verdict was not supported by sufficient evidence. The trial court denied the motion, and this appeal followed.

¶ 7. Defendant first claims that the trial court erred in changing the definition of "follow" from the first trial to the second, and in denying the motion for acquittal to correct that error. Defendant argues that this change violated the "law of the case." Because defendant failed to object to the jury instruction, this issue has not been preserved for appeal. See *State v. Dunbar*, 172 Vt. 557, 559, 772 A.2d 533, 536 (2001) (mem.); *State v. Koch*, 171 Vt. 515, 517-18, 760 A.2d 505, 507 (2000) (mem.). In any event, the "law of the case" doctrine is a discretionary rule of practice, not a rule of law, and "in a proper case," the trial court may depart from the doctrine. *Morrisseau v. Fayette*, 164 Vt. 358, 364, 670 A.2d 820, 824 (1995).

¶ 8. Defendant next claims that the trial court erred in instructing the jury that the legal definition of "following" included placing oneself in physical proximity of another, and that such de-

finition renders the abuse prevention order's additional prohibitions superfluous. The abuse prevention order states, in pertinent part, "[d]efendant shall not follow or stalk"; or "place himself within 100 feet" of Libbey. Defendant argues that the definition given for following renders the other two prohibitions superfluous because it is so broad that it encompasses stalking and entering the 100-foot zone.

¶ 9. Because defendant failed to object to the instructions at the proper time, after the instructions were given, we will review the claims for plain error only. See *State v. Tahair*, 172 Vt. 101, 104-05, 772 A.2d 1079, 1082 (2001); *State v. Carpenter*, 170 Vt. 371, 374, 749 A.2d 1137, 1139 (2000). Jury instructions will be "viewed in their entirety and must be well balanced and fair." *State v. Brooks*, 163 Vt. 245, 250, 658 A.2d 22, 26 (1995). This Court will find plain error "only when the entire charge undermines our confidence in the verdict, and only in extraordinary cases." *Id.*

¶ 10. There was no plain error. Under the abuse prevention order, defendant was precluded from following, stalking, or entering a buffer zone of 100 feet of Libbey. The trial court incorporated part of the definition of following from the stalking statute noting that the definition reflected the Legislature's belief that following could occur from any direction, not only from behind. Thus, the definition does not render the other provisions superfluous because one could stalk another without following, as stalking is also defined as "[engaging] in a course of conduct which consists of . . . lying in wait or harassing, and . . . caus[ing] the person to fear for his or her physical safety or caus[ing] the person substantial emotional distress." 13 V.S.A. § 1061(1)(B). Similarly, it would be possible to follow someone without entering the buffer zone and to enter the buffer zone without following. For example, if defendant had

stopped and approached within 100 feet of Libbey when she was at her brother's residence, defendant could have been charged with entering the buffer zone. Conversely, as in this case, defendant could be charged with following without entering the buffer zone. The trial court's definition of following did not render the prohibitions against stalking and entering the buffer zone superfluous.

¶ 11. Defendant next contends that the trial court erred in denying his motion for acquittal. Defendant argues that even if the definition of following is correct, the trial court erred in denying the motion for acquittal because the State did not produce sufficient evidence to support the verdict.

¶ 12. On review of a V.R.Cr.P. 29 motion for acquittal, we determine "whether the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Prior, 174 Vt. 49, 53, 804 A.2d 770, 773 (2002) (internal quotations omitted). Viewing the evidence in a light favorable to the State, there was enough evidence for a reasonable jury to conclude that defendant's conduct constituted following. The State produced evidence to show that the truck in which defendant was a passenger passed Libbey several times while she was talking with her brother. Later, when defendant appeared behind Libbey on Route 5, she pulled over to let his vehicle pass. Despite proceeding slowly, Libbey did catch defendant's truck, which appeared to have slowed down. Defendant's vehicle remained in proximity to Libbey's for several miles, and defendant threw a beer bottle out the window toward Libbey. Moreover, the jury was the sole judge of the credibility of the witnesses and was free to weigh the testimony before it, including the testimony of de-

fendant's girlfriend that she and defendant were merely running errands and all contact with Libbey was coincidental. See State v. Norton, 134 Vt. 100, 103, 353 A.2d 324, 326 (1976) (credibility of witness and weight given to their testimony is the sole province of the jury). A reasonable jury could conclude on the basis of the evidence before it that defendant had violated the abuse prevention order by following Libbey, as the term was defined in the jury instructions.

¶ 13. Defendant's final claim is that the trial court erred in excluding a "violent and threatening" outburst by Libbey against defendant made outside the courthouse. This incident occurred three months after the encounter at issue in this case, and eight months before the trial. Libbey allegedly told defendant that "he was going down," he should go to jail, and that he would never see the light of day or his daughter again. The State made a motion in limine to exclude these statements as irrelevant and likely to confuse the jury by creating an evidentiary side issue. See V.R.E. 401, 403. The State further notified the court that if the statements were admitted to impeach Libbey's credibility, the State would seek to introduce evidence of defendant's prior assaults on Libbey, which the trial court had previously excluded. The judge granted the State's motion to avoid "opening the door" to admission of defendant's prior acts. The court explained that "[c]ross-examining an alleged victim as to why they don't like a person or has ill will [toward] a person opens the door for [an] explanation of why."

¶ 14. We have previously held that where defense counsel seeks to impeach a witness's credibility "by painting an incomplete picture of unwarranted bias," the State may complete the picture with "appropriate detail." State v. Recor, 150 Vt. 40, 44, 549 A.2d 1382, 1386 (1988); State v. Crannell, 170 Vt. 387, 406, 750 A.2d 1002, 1017 (2000). Thus, we agree

with the trial court that the use of Libbey's outburst for impeachment purposes would open the door for the State to use defendant's prior acts to "complete the picture." Nevertheless, we agree with defendant that the court erred in finding the statements inadmissible on that basis. The decision of whether to introduce evidence of the victim's comments, with the potential consequence of defendant's prior bad acts being admitted by the State, was a strategic decision for the defense counsel to make, not the court. If defendant wanted to take the risk that the State would use his prior bad acts to explain the impeachment evidence, there is no rule barring such action. *State v. Fuller*, 168 Vt. 396, 407, 721 A.2d 475, 483-84 (1998). We must determine, however, whether the court's ruling constituted reversible error. We treat the damaging potential of the excluded impeachment evidence as fully realized, and if it is clear beyond a reasonable doubt that defendant would have been found guilty even if the proffered evidence had been admitted, the court's ruling will be deemed harmless error. *Id.* at 407-08, 721 A.2d at 484.

¶ 15. Although "wide latitude should be allowed on cross-examination for the purpose of showing who and what the witness is, and that he is unre12liable, prejudiced, or biased," *State v. Berard*, 132 Vt. 138, 147, 315 A.2d 501, 508 (1974), Libbey's possible bias had little relevance in this case. The main issue for the jury to decide was whether defendant was intentionally following Libbey or, as defendant claimed, any contact was a mere coincidence. Libbey's testimony was not regarding defendant's intent, to which she would not have been allowed to testify, but rather to the facts of her encounter with defendant. Defendant acknowledges, however, that, although the parties dispute the others' motivation and intent, "[t]he overall factual scheme adduced at trial is relatively undisputed."

Here, witness credibility was not "a pivotal issue bearing on defendant's guilt." *State v. Cartee*, 161 Vt. 73, 77, 632 A.2d 1108, 1111 (1993). Defendant does not dispute that on the day in question he had encountered Libbey several times, that he had thrown a bottle out of the vehicle, and that his girlfriend called the state police several times reporting Libbey's current location at each respective time. All that was left to the jury was the determination of whether it is possible to infer intent from those actions. Given the marginal relevance of the excluded statements to this determination, it is clear beyond a reasonable doubt that defendant would have been found guilty even if the statements had been admitted, and therefore their exclusion was harmless error. See *Fuller*, 168 Vt. at 407-08, 721 A.2d at 483-84.

*Affirmed.*