2009 VT 69

**MATHIEU ENTERPRISES, INC. v. PATSY'S COMPANIES, et al.**

[978 A.2d 481]

No. 08-157

¶ 1. June 19, 2009. Plaintiff Mathieu Enterprises, Inc. appeals from the superior court's order granting defendant remittitur or a new trial in this breach-of-warranty action arising from plaintiff's purchase of six shuttle buses from defendant Patsy's Companies. We reverse the order and reinstate the jury's verdict.

¶ 2. The facts relevant to this appeal are undisputed and may be briefly summarized. Mathieu Enterprises, via an intermediary, purchased six shuttle buses from Patsy's and took delivery in 2002.[1] The buses, as both parties were aware at the time, were to be used to provide continuous transportation to and from parking lots around a hospital for roughly eighteen hours each day. An array of defects — electrical, mechanical, and structural — were soon apparent. Among other things, the buses leaked through their roofs, lacked exterior rear-view mirrors, and had seats that blocked access to exit doors. The electrical problems were particularly pronounced, and the lights, both interior and exterior, were known to fail while the buses were in use. Doors spontaneously opened while buses were in operation and the doors fell off one bus when they were opened for passenger pickup. The wiring underneath the buses was not protected from the elements and became disconnected when snow or ice accumulated on it. In light of these and other problems, the warranty on the buses was extended from the original one-year and twelve thousand miles to five years and unlimited miles.

---

[1] The intermediary assigned its warranty rights to plaintiff.

¶ 3. Mathieu repeatedly sent the buses to a local garage for repairs, and ultimately hired its own night mechanic to keep the buses running during times when the garage was closed. The problems continued despite these efforts. Mathieu's principal drove one bus himself back to the manufacturer in hopes of finding relief. That effort, too, was for naught. Indeed, there was testimony that the bus returned in worse condition than ever. After the buses had been in use for a period of months, Mathieu ceased using them and returned to its prior system of using modified school buses.

¶ 4. Mathieu then instituted this action in September 2003, alleging, among other things, that defendant had breached express and implied warranties by delivering buses that did not provide "remarkable durability," "efficiency advantages," or "low-cost operating schedules," as defendant's advertisements promised. The complaint was later amended to include a claim under the Consumer Fraud Act. In October 2005, while this action was pending, two of the buses were destroyed by fire while sitting in a parking lot.

¶ 5. Prior to trial, Mathieu filed a motion in limine to preclude Patsy's from offering evidence concerning compensation Mathieu received from its insurance carrier for the fire loss. Patsy's did not oppose Mathieu's motion and simultaneously moved for an order barring expert testimony regarding the cause or origins of the fires. Both motions were granted after an unrecorded conference with the trial judge.

¶ 6. The case was tried to a jury. The jury heard several days of evidence, including extensive testimony concerning the buses' defects and the efforts made by both Mathieu and Patsy's to repair them. No effort was made to introduce any evidence — either substantively or for impeachment — concerning the value Mathieu may have attributed to the buses in the fire-insurance action. Mathieu also

submitted to the jury, without objection, an exhibit estimating the "Lost Value" of the buses based on their abbreviated useful life. According to the exhibit, the buses cost a total of $554,400 and were warranted to have a useful life of 300,000 miles, but were actually useable for between 32,680 and 62,142 miles. Thus, the total "Lost Value" was estimated at $462,924.

¶ 7. The jury was instructed explicitly, and without objection from either party, that evidence of the fire that burned two of the buses "is not part of this case." For the computation of damages, the jury was instructed to "consider each bus individually then add any resulting figures together." Additionally, the judge stressed that insurance coverage and any money the plaintiff would have received from the fire was not an issue in this case. The sole issues for the jury were liability and damages. The jury was charged that the measure of damages was the difference in value between the buses as delivered and as warranted. 9A V.S.A. § 2-714(2). There was no objection. The jury found for plaintiff and awarded $443,520 in damages.

¶ 8. Defendant then moved for remittitur or a new trial on the basis that plaintiff had not presented sufficient evidence of the value of the buses as delivered, and generally asserting that the jury's verdict must have been based on an improper theory. In the motion, defendant stated, in a footnote, that "[a]t the time two of the buses burned the Plaintiff asserted that the buses were worth at least $69,000, so [they] could not have [been] worth less than $20,000 at the time they were delivered." Plaintiff opposed the motion, relying principally on the substantial deference owed to the jury's verdict and the ample evidence presented to the jury for the calculation of damages. The court denied the motion and entered judgment for plaintiff.

¶ 9. On November 2, 2007, nearly six months after entry of judgment, the su-

perior court issued an order noting that it intended to take judicial notice of the filings in the then-pending matter of *Westport Ins. Co. v. Patsy's*, a subrogation action relating to the fire insurance coverage claim. The court noted that in that litigation there was an allegation *by Westport* that it was subrogated to Mathieu for $136,000. Plaintiff responded that the pleadings in another case were *not* an appropriate subject of judicial notice. The argument appears to have persuaded the court, which ultimately based its new-trial/remittitur order on the theory that it was reversing its earlier decision to bar evidence of fire-insurance recovery under the collateral-source rule. The court entered judgment on April 4, 2008, for plaintiff in the amount of $146,400 plus interest. Plaintiff appealed, and defendant cross-appealed.

I. Plaintiff's Appeal

¶ 10. The grant of an order on a motion for a new trial or remittitur is reviewed for abuse of discretion. *Brault v. Flynn*, 166 Vt. 585, 586, 690 A.2d 1365, 1366 (1996) (mem.). "Abuse of discretion occurs when that discretion is exercised on grounds or for reasons clearly untenable, or to an extent clearly unreasonable." *Salatino v. Chase*, 2007 VT 81, ¶ 22, 182 Vt. 267, 939 A.2d 482 (quotation omitted). Remittitur is appropriate only if the jury's verdict is outside "the universe of possible awards which are supported by the evidence." *Bonura v. Sea Land Serv, Inc.*, 505 F.2d 665, 670 (5th Cir. 1974). In other words, as this Court held in *Trombley v. Southwestern Vermont Medical Center*, 169 Vt. 386, 398, 738 A.2d 103, 112 (1999), "the jury award must stand if the verdict can be justified on any reasonable view of the evidence."

¶ 11. Article 12 of the Vermont Constitution states, "when any issue in fact, proper for the cognizance of a jury is joined in a court of law, the parties have a right to trial by jury, *which ought to be held sacred*." Vt. Const. ch. I, art. 12 (emphasis added). Our deference to jury verdicts, prompted by the Constitution itself, is complicated in cases where the trial judge has found that the jury's verdict was impermissible on the evidence presented. As the D.C. Circuit has noted, "The [trial] judge's unique opportunity to consider the evidence in the living courtroom context must be respected. But against his judgment we must consider that the agency to whom the Constitution allocates the fact-finding function in the first instance — the jury — has evaluated the facts differently." *Taylor v. Wash. Terminal Co.*, 409 F.2d 145, 148 (D.C. Cir. 1969). We need not, however, delve too deeply into the issue of conflicting deferences, for the trial judge here made reversible legal errors in his decision to order remittitur.

¶ 12. The primary error was the court's reliance on evidence it had already properly ruled inadmissible: an unsigned, undated insurance form from another case in which someone (presumably plaintiff) gives a value of about $68,000 for *one* of the buses. As noted above, the trial court had earlier granted plaintiff's motion in limine to exclude, presumably because of the collateral source rule, see *Bradley v. Buck*, 131 Vt. 368, 372, 306 A.2d 98, 101 (1973), any evidence of the insurance proceedings.[2] The insurance form itself was never offered by defendant to prove that the value of the buses was lower than plaintiff claimed. Even if the document had been proffered and admitted, it would have supported, at best, a lower valuation of one of the buses. It is simply silent about the value of the other buses.

¶ 13. Moreover, the unsigned insurance form was never offered as evidence, and if it had been offered and admitted, it would

_____

[2] Although the judge ruled on the motion off the record and in chambers — a practice we would discourage — Patsy's agrees that such a ruling was made.

have been modifying evidence that would not be considered on a motion for new trial. *George C. Stanley & Sons, Inc. v. Roy*, 125 Vt. 136, 137, 211 A.2d 243, 245 (1965). Thus, even if the insurance form had been submitted to the jury, it would have been within the province of the jury to credit the "Lost Value" exhibit instead. Of course, the insurance form was never admitted; the trial judge properly excluded it and explicitly instructed the jury that any money received from the insurance claim was not an issue in this case. However, after trial, and contrary to two provisions of the jury instructions that the jury itself had followed and to which no party had objected, the court reversed its own pretrial decision. The order for remittitur was based on the claim of a party in another case; a claim of which the trial judge conceded he could not take judicial notice.

¶ 14. The trial court stated in its February 25, 2008 order that "[a] court may grant a new trial on the basis of the general interests of justice if it is satisfied that a jury verdict will work a substantial injustice if permitted to stand." Citing *Pitts v. Electro-Static Finishing, Inc.*, 607 F.2d 799, 804 (8th Cir. 1979), it found that an injustice would result because "plaintiff is seeking to recover significantly more than it, in a serious business transaction, claimed as the value of the buses." In *Pitts*, the district court judge ordered a new trial because "the verdict was clearly against the preponderance of the evidence, and . . . the amount of the verdict was such as to suggest passion and prejudice on the part of the jurors." *Id.* at 802. Here, by contrast, the jury verdict was supported by ample evidence presented to the jury, which the trial judge acknowledged, and the award was less than the amount plaintiff requested, and less than the amount that the "Lost-Value" evidence supported.

¶ 15. Defendant has adopted the trial court's logic on appeal, arguing that

remittitur or new trial is permitted when the verdict is excessive. See *Riley v. Ford Motor Co.*, 442 F.2d 670, 674 (5th Cir. 1971) (granting a new trial when the award by the jury exceeded the possible worth of the automobile in question); *Haynes v. Golub Corp.*, 166 Vt. 228, 239-40, 692 A.2d 377, 384 (1997) (remanding on excessive damages when the trial court failed to properly instruct the jury on how to calculate the present value of plaintiff's front-pay award). However, neither of these cases is applicable to the present case. In *Riley*, the Fifth Circuit ordered a new trial because the verdict was not supported by the evidence, 442 F.2d at 674, whereas here the jury was provided with ample evidence, through Mathieu's testimony, that the buses were nearly worthless as delivered. As stated above, the only evidence used by the trial court in determining remittitur was the insurance form that had been excluded from the evidence presented to the jury. In *Haynes*, this Court ordered a new trial when the plaintiff had requested front-pay damages up to her retirement age, but the jury's award contemplated employment thereafter. 166 Vt. at 239-40, 692 A.2d at 384. Here, by contrast, the jury's award can be justified on a reasonable view of the evidence and was not in excess of the claim presented. Remittitur was improper.

## II. Defendant's Cross-Appeal

¶ 16. Defendant filed a cross-appeal, requesting a new trial on the issue of damages if we reverse the trial court's grant of remittitur. Defendant argues that it is entitled to a new trial because the trial court wrongfully excluded evidence concerning the value of the burned buses by granting plaintiff's motion in limine, thus prejudicing the jury. We disagree.

¶ 17. Defendant argues that under V.R.C.P. 60(b)(6), the catch-all provision, a new trial is warranted "to correct an

injustice." As we stated in *Sandgate School District v. Cate*, "[r]elief from judgment under Rule 60(b)(6) is intended to prevent hardship or injustice and thus [is] to be liberally construed and applied." 2005 VT 88, ¶ 7, 178 Vt. 625, 883 A.2d 774 (mem.) (quotation omitted). We went on to note, however, that "clause (6) of the Rule may not be used to relieve a party from free, calculated, and deliberate choices he has made." *Id.* Here, defendant did not oppose the motion in limine to exclude the evidence of insurance, did not attempt to admit the insurance form for impeachment purposes, and did not object to the instructions by the trial judge that explicitly forbade the jury from considering the insurance information. These tactical decisions preclude defendant from relief under Rule 60(b), which "does not operate to protect a party from freely made tactical decisions which in retrospect may seem ill advised." *Wild v. Brooks*, 2004 VT 74, ¶ 20, 177 Vt. 171, 862 A.2d 225. Accordingly, we conclude that the proper course is to reinstate the jury's verdict, not to give defendant another opportunity to make its case.

*The remittitur order is vacated and the jury's verdict is reinstated.*