2010 VT 106

## State of Vermont v. Lee Herring

[19 A.3d 81]

No. 09-188

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed December 3, 2010

Motion for Reargument Denied February 3, 2011

*David W. Gartenstein*, Windham County Deputy State's Attorney, Brattleboro, for Plaintiff-Appellee.

*Steven B. Wright* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellant.

¶ 1. **Burgess, J.** Defendant Lee. Herring appeals his conviction in Windham District Court for aggravated sexual assault, sexual assault on a minor, and lewd or lascivious conduct with a child. He contends the trial court erred by excluding evidence proffered to impeach the complainant's credibility, by restricting defendant's cross-examination of another witness, by admitting evidence to impeach defendant, by excluding evidence of bias and by refusing to grant defendant a continuance. We conclude that in excluding defendant's impeachment evidence the trial court committed reversible error by violating his right to confront witnesses against him. We vacate the conviction and remand for a new trial.

¶ 2. Defendant was first charged in June 2006 with three counts of aggravated sexual assault under 13 V.S.A. § 3253, two counts of sexual assault on a minor under 13 V.S.A. § 3252, and one count of lewd or lascivious conduct with a child under 13 V.S.A. § 2602. The alleged abuse spanned nearly a decade, beginning when defendant's daughter was five years old and continuing until she was sixteen. Defendant's first trial, in February 2008, ended in a hung jury. At his second trial, in December 2008, the jury returned a guilty verdict, and defendant was sentenced to thirty-years-to-life imprisonment. This appeal followed.

¶ 3. Defendant's primary claim of error concerns a version of the complainant's narrative in which she vomited profusely when defendant had her drink Alka-Seltzer after forcing her to perform oral sex. At the second trial, the complainant testified that this Alka-Seltzer incident took place in the family home in Windham County. On cross-examination, the defense attempted to introduce a videotaped police interview showing the complainant's earlier statement to a detective that the Alka-Seltzer incident took place at a hotel in a different county. In a bench conference with the

trial judge, defendant sought to introduce the prior inconsistent videotaped statement as impeachment evidence. The trial court excluded the impeachment evidence on grounds that it was unduly prejudicial to defendant — the proffering party.

¶ 4. Our standard of review on evidentiary rulings is deferential. The trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." V.R.E. 403. Balancing these factors is a matter for the trial court's discretion, and we will ordinarily uphold its rulings. See *State v. Gemler*, 2004 VT 3, ¶ 13, 176 Vt. 257, 844 A.2d 757 (stating standard of review on V.R.E. 403 rulings). On appeal, it is the defendant's burden to show that the trial court abused its discretion by ruling on clearly unreasonable grounds. *Id.* Absent such a showing, we will not disturb a reasonable discretionary ruling of the trial court, "even if another court might have reached a different conclusion." *State v. Foy*, 144 Vt. 109, 115, 475 A.2d 219, 223 (1984). In the event of error, we may nevertheless uphold a conviction "if we find that the error was harmless beyond a reasonable doubt." *State v. Lipka*, 174 Vt. 377, 384, 817 A.2d 27, 33 (2002) (emphasis omitted); see also V.R.Cr.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); V.R.E. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.").

¶ 5. Here, the trial court's ruling was error. Rejecting defendant's effort to impeach, the court explained to defense counsel that "the prejudice to your client" from the described circumstances underlying the Alka-Seltzer incident "far outweighs the probative value of it." The ruling stemmed largely from the court's earlier order, sought by defendant before the first trial, to exclude the State's evidence of other acts by defendant against his daughter that occurred outside of Windham County.[1] At the bench confer-

---

[1] The exclusion order was apparently based on some jurisdictional ground, and the printed case sets forth no rationale for excluding the evidence of uncharged crimes under V.R.E. 404(a) (deeming character evidence generally inadmissible to prove proclivity) or V.R.E. 403 (allowing exclusion of evidence when probative value is outweighed by danger of unfair prejudice). In response to defendant's appeal, the State posited, without citation to authority or reference to 4 V.S.A. § 436 (creating

ence, when the State complained about admitting just this incident apart from its entire surrounding circumstances, defendant responded that he had no objection to the jury hearing about the whole episode. Nonetheless, the court remained reluctant to admit evidence already deemed inadmissibly prejudicial had the State offered it.[2]

¶ 6. Whatever qualms the trial court may have had about defendant's risks in his approach to impeaching the complainant, it is not, as a general matter, for the trial court to undermine a defendant's chosen strategy. As the United States Supreme Court held, "decisions by counsel are generally given effect as to what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence. Absent a demonstration of ineffectiveness, counsel's word on such matters is the last." *New York v. Hill*, 528 U.S. 110, 115 (2000) (citations omitted). We have similarly held that Vermont Rule of Civil Procedure 60(b)(6), our "catch-all provision" requiring a new trial "to correct an injustice[,] . . . does not operate to protect a party from freely made tactical decisions which in retrospect may seem ill advised." *Mathieu Enters., Inc. v. Patsy's Cos.*, 2009 VT 69, ¶ 17, 186 Vt. 557, 978 A.2d 481 (mem.) (quotations omitted).

¶ 7. Considering the full context of defendant's impeachment strategy, it is not insignificant that in its case-in-chief the State introduced expert testimony to the effect that credibility of sexual assault victims may be enhanced by their recollection of idiosyncratic details associated with their disclosures of abuse. The Alka-Seltzer incident could qualify as such a detail, and inconsistency in such a recollection could objectively reflect poorly on the complainant's credibility. Absent some explanation by the court to the contrary, the record does not show that evidence of the complainant's earlier inconsistent version of the Alka-Seltzer incident would have been obviously prejudicial to defendant, rather

"[o]ne district court having statewide jurisdiction"), that the district court properly excluded the evidence of defendant's sexual assault of his daughter at the motel because of lack of jurisdiction over crimes committed beyond Windham County. The trial court appears to have agreed, without further explanation, that "jurisdictional issues" rendered complainant's testimony about the Alka-Seltzer incident at the motel inadmissible.

[2] The court suggested, although defendant disagreed, that evidence of one out-of-county episode could set the stage for inquiry into others. Whether this was likely was rendered moot by the court's ruling.

than shedding doubt on one or both of the complainant's descriptions of the event. Thus, the prior inconsistent statement appeared relevant on the issue of credibility, despite defendant's awareness of the potential prejudice. Without a finding that defense counsel's offer of proof was incompetent, the trial court should have respected defendant's tactical decision, and his assumption of the risk by waiver on this point, and allowed him to proceed with his evidence.

¶ 8. Improper exclusion of evidence to impeach a key prosecution witness is a serious error, implicating fair trial rights under both the United States and Vermont Constitutions. Although our harmless error analysis is generally "identical in constitutional and nonconstitutional criminal cases," *State v. Oscarson*, 2004 VT 4, ¶ 30, 176 Vt. 176, 845 A.2d 337, following *Davis v. Alaska*, 415 U.S. 308 (1974), "this Court specifically acknowledged that a trial court's discretion to restrict the impeachment of a key prosecution witness with evidence reflecting on his credibility is limited by the protection afforded by the Confrontation Clause." *State v. Cartee*, 161 Vt. 73, 76, 632 A.2d 1108, 1111 (1993) (quotation omitted); see also *State v. Covell*, 146 Vt. 338, 341, 503 A.2d 542, 544 (1985) (concluding that impeachment of key prosecution witness implicates Due Process Clause of the Fourteenth Amendment of the United States Constitution, Confrontation Clause of the Sixth Amendment, and Chapter I, Article 10 of the Vermont Constitution." (citations omitted)). We held in *State v. Forty* that the Confrontation Clause "includes not only the right to cross-examine adverse witnesses but also entitles a criminal defendant 'wide latitude . . . on cross-examination for the purpose of showing who and what the witness is, and that he is unreliable, prejudiced, or biased.'" 2009 VT 118, ¶ 24, 187 Vt. 79, 989 A.2d 509 (citation omitted) (quoting *State v. Berard*, 132 Vt. 138, 147, 315 A.2d 501, 508 (1974)). The right of confrontation is not violated by the exclusion of evidence that is otherwise inadmissible. *Id.* However, since the excluded evidence here *was* admissible, and was directed toward undermining the credibility of the State's sole direct witness, the right to confrontation was implicated.

¶ 9. In *Covell* we reversed a conviction because the trial court excluded impeachment evidence in a case, like this one, in which "the outcome hinge[d] largely on the credibility of the

witnesses." 146 Vt. at 341, 503 A.2d at 545. We held that despite the deference due to a trial court's evidentiary rulings, "[e]rror in the restriction of a defendant's cross-examination of a government witness has constitutional implications and, therefore, we must be extremely hesitant in brushing aside such error as harmless." *Id.* at 342, 503 A.2d at 545 (quotation omitted). The State points to our holding in *State v. Raymond*, 148 Vt. 617, 621, 538 A.2d 164, 166-67 (1987), that the Confrontation Clause guarantees only a *sufficient* opportunity to impeach witnesses, which, once satisfied, does not restrict a trial court's discretion in evidentiary rulings. But in *Raymond* the defendant sought to introduce "potentially lurid details of the investigations [for prostitution] pending against [his] girlfriend," facts which were redundant and "of no relevance to the case against defendant." *Id.* Here, the proffered evidence was targeted at the credibility of the complainant herself and depended upon factual inconsistencies in her testimony describing offensive misconduct by defendant, rather than on any lurid details about the complainant.

¶ 10. The instant case is more like *Cartee*, where the complainant's uncorroborated testimony was the only evidence of alleged abuse and "[r]easonable doubt about [the complainant's] believability would have necessarily resulted in an acquittal." 161 Vt. at 77, 632 A.2d at 1111. Although there was a degree of corroborating evidence in this case, it was all contested and not objectively inviolable. The impact of excluding impeachment evidence is particularly critical where there is no independently incriminating proof beyond a reasonable doubt. In the instant case there was evidence tending to corroborate, but not seal, the veracity of the complainant's testimony. The complainant's brother saw her on a bed with defendant as once claimed, but saw no illicit contact. Her friend's confirmation of an earlier disclosure was no guarantee of accuracy. Evidence of defendant's work schedule and the complainant's school attendance was arguably consistent with, but did not necessarily confirm, her recollection of defendant's access to her. The complainant's brothers testified about incriminating admissions by defendant, but defendant contended that the brothers offered those alleged confessions, not when they were first interviewed by police, but sometime later in the investigation, and they should not therefore be relied upon. The prosecution remained, largely, a swearing contest between the complainant and defendant, punctuated by other evidence which, if believed, was corroborating, but all of which was in sharp dispute.

¶ 11. Credibility is, of course, up to the jury, and it may be that the complainant and her corroborators were entirely believable while defendant was not. This Court cannot, however, know that from this record — just as we cannot conclude beyond a reasonable doubt that the impeachment evidence erroneously excluded would have had no impact on the jury's credibility assessment in this contested case. As in *Cartee*, reasonable doubt about the complainant's testimony could have changed the outcome of the case and, under the circumstances here, the centrality of defendant's right to confront a witness with a prior inconsistent statement cannot be discounted.

¶ 12. Defendant's alleged confessions to his sons did not make the trial court's erroneous exclusion of the videotape testimony harmless. According to the testimony of the complainant's brothers, defendant asked how they could look at him, "knowing what I've done to your sister," and about "how much detail [they] wanted to know," while claiming to one "that there was no penetration of any kind, and that . . . he would go to his grave with that statement." The State argues that defendant's admissions are sufficient to overcome any reasonable doubt and that the jury would have convicted defendant even had the complainant been impeached by her prior inconsistent statements about the idiosyncratic Alka-Seltzer incident. Again, we must disagree where the occasions of the claimed admissions are themselves contested and absent other circumstances under which to view the incriminating evidence as overwhelming. The record bears out defendant's chronology that, despite the obvious importance of his confessions as purported by the brothers, they did not reveal these to the police in the first instance. The complainant's credibility continued to be the foundation of this prosecution, regardless of the brothers' supporting testimony.

¶ 13. In prohibiting defendant from presenting the full range of evidence on the Alka-Seltzer incident, the trial court not only blocked an arguably valid tactical decision, but also foreclosed defendant from his constitutional right to confrontation. The trial court erred in excluding the proffered evidence concerning the Alka-Seltzer incident. The ruling was not justified by avoidance of undue prejudice, since it was directly waived by defendant's own request, and is unexplained by the court in terms of other balancing to exclude relevant evidence under evidentiary Rule 403. Nor is the court's ruling explained in jurisdictional terms. The

right to confront and impeach witnesses, always a linchpin of our criminal process, is most important when the prosecution's case, as here, essentially depends upon the credibility of a single witness. Because the error cannot be considered harmless beyond a reasonable doubt and is of constitutional dimension, the conviction must be reversed and the case remanded for new trial.

¶ 14. Having disposed of the appeal on confrontation grounds, we need not resolve defendant's other claims of error.

*Reversed and remanded.*