NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 16

No. 2016-315

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windham Unit, |
| | Criminal Division |
| | |
| Daniel L. Larkin | October Term, 2017 |

Katherine A. Hayes, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Rebecca Turner and Amanda Isaacs, Appellate
  Defenders, Montpelier, for Defendant-Appellant.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.     **SKOGLUND, J.**    Defendant Daniel Larkin appeals his conviction of second-degree aggravated domestic assault. Defendant argues that the trial court's exclusion of evidence of complainant's previous conviction for providing false information to a police officer (FIPO), offered by defendant to impeach complainant, deprived defendant of a fair trial. We agree that the trial court erred in excluding the evidence and that the error was not harmless. Accordingly, we reverse.

¶ 2.     On December 9, 2015, defendant was charged with first-degree aggravated domestic assault under 13 V.S.A. § 1043(a)(1) and second-degree aggravated domestic assault under 13 V.S.A. § 1044(a)(2)(B). Both charges arose from a series of events on the night of

December 8, 2015 involving defendant and complainant. The first-degree aggravated domestic assault charge was based on an allegation that defendant had strangled complainant while they were in a motel room. The second-degree aggravated domestic assault charge was based on an allegation that, later the same evening, defendant recklessly inflicted injuries on complainant when defendant ordered her out of his car and left her on the side of the road.

¶ 3. Prior to trial, the State filed a motion in limine to preclude defendant from questioning complainant about (1) her prior FIPO conviction and "other fighting behavior," (2) her pending probation violation charge, (3) her prior drug history, and (4) the fact that she was expelled from a drug-rehabilitation center two days prior to the alleged assault. On April 21, 2016, a hearing was held on the motion and the trial court issued a written entry order. The trial court determined that evidence of complainant's history of substance abuse and mental health treatment and her probation status and violations was irrelevant and would be excluded. However, the trial court determined that evidence of complainant's FIPO conviction was admissible for the purpose of impeachment under Rule 609 of the Vermont Rules of Evidence and that evidence of complainant's conviction of simple assault might be admissible if defendant presented evidence sufficient to raise a claim of self-defense.

¶ 4. A jury trial was held on April 26 and 27, 2016. On the first morning of trial, before opening arguments, it became clear that complainant would not be present to testify. Defendant argued that the trial court should exclude complainant's 911 call and statements to responding police officers on the grounds that they were hearsay and violated his right to confrontation. See generally Crawford v. Washington, 541 U.S. 36 (2004); State v. Shea, 2008 VT 114, 184 Vt. 453, 965 A.2d 504. The trial court rejected both of these arguments and admitted the statements because they were given in response to an ongoing emergency and were excited utterances.

¶ 5. The following evidence was introduced through the State's witnesses' testimony and complainant's 911 call. On the evening of December 8, 2015, complainant attempted to rent

2

a motel room but was denied because her name was on the "do not rent" list. Complainant, upset with the decision, left the motel. About fifteen minutes later, defendant entered the motel and rented a room for the night. Later that night, the clerk received a noise complaint from a room neighboring defendant's room complaining of "horrible yelling and banging." The clerk testified that she called defendant's room and spoke to a female, who sounded like complainant. The female apologized, explaining that she had dropped her suitcase.

¶ 6.     Later, the clerk answered a phone call from defendant's room. She could not get anyone's attention but could hear the same female voice in the background crying and yelling. The clerk hung up and called back, but there was no answer. The clerk then walked outside and saw a crying female walking across the parking lot. The clerk testified that the female's boots made a similar clicking sound to the boots complainant was wearing when she attempted to rent a room earlier in the evening.

¶ 7.     Shortly after midnight, the Vermont State Police received a 911 call from complainant. The dispatcher who received the call testified that, when she first picked up the phone, she heard "[a] lot of mumbling and moaning and [a] very frustrated voice." An audio recording of the 911 call was played for the jury. During the 911 call, complainant made the following statements: "He hurt me so bad"; "He kicked me in the stomach it's really hard for me to breathe"; "Why did he have to punch me in the face"; "He pulled my hair out"; and "I'm in pain, I'm in a lot of pain." Complainant also identified defendant, by name, as the "he" to whom she was referring. Brattleboro Police Department officers were dispatched and found complainant crying by the side of the road about one mile from the motel. The responding officers testified that complainant's hair was disheveled, both of her eyes were black and blue, there was a bump on her forehead, and she had no shoes on.

¶ 8.     The ambulance personnel who responded to the scene testified that complainant was in the same physical state as described by the officers' testimony. Further, they testified that

3

complainant said her boyfriend strangled her and hit her at a motel, then dragged her from a car, punching and kicking her. A treating nurse at the hospital where complainant was brought testified to complainant's same physical appearance and that complainant said her boyfriend had beaten her up and kicked her out of a car.

¶ 9.    After complainant was transferred to a hospital, police officers went to the motel to locate defendant. Defendant was not there, but the room was in disarray. The officers testified that clothing and pills were scattered on the floor and that the bathroom door was not on its hinges and was missing. Complainant later told police that defendant had broken the door off its hinges to throw at her.

¶ 10.   Around one in the morning on December 9, 2015, defendant was stopped for speeding. He told the officer that he was returning home after visiting his girlfriend. He was processed for driving while intoxicated. The officer testified that defendant did not complain of any injuries, though the officer noted that his left hand seemed swollen. Defendant, while testifying on his own behalf, explained that he had slipped and fallen the previous winter and as a result of his injuries, he had undergone surgery to place a plate in his hand, which frequently caused him discomfort. Defendant was arraigned later during the morning of December 9.

¶ 11.   At the close of the State's case, defendant moved for judgment of acquittal, which was denied. Defendant then sought to admit evidence of complainant's FIPO conviction, arguing that it was admissible "under Rule 609 through standard impeachment." Defendant noted that complainant had effectively testified through the 911 call and other witnesses' testimony and that the State's "whole case is about what [complainant] said happened, and then there's circumstantial evidence that's offered to support it." Defendant further argued that the introduction of the 911 call was prejudicial to defendant because there was no way to test "the veracity of her purported statements" and "absent being able to impeach [complainant] in some appreciable way,

[defendant] has no real defense other than to say that's not true, and then the jury doesn't have a complete picture."

¶ 12. The State argued that it was inappropriate for complainant's prior conviction to come in without her being present to testify at trial. The trial court agreed with the State, and held that if complainant had testified at trial, "either side [could] impeach her with evidence of her prior conviction for false information to a police officer . . . but if she does not testify, Rule 609 does not apply and her prior convictions are not relevant."

¶ 13. Defendant then testified on his own behalf. He testified that he and complainant checked into the motel and got into an argument. As the argument escalated, complainant got physically aggressive and started hitting defendant, so he left the room and slept in his car in the motel parking lot. Defendant testified that he woke up to complainant entering his car and demanding that he drive her to get cigarettes, noting that she was under the influence of drugs that made her "more agitated and more irritable." He asked her to leave, and she refused. As they drove to the store, the argument escalated, and complainant started hitting defendant again. He pulled the car over and asked complainant to get out. When she refused, defendant got out and pulled her out and away from the car. Complainant started to kick the car, at which point defendant admitted to pushing her "far enough so [he] could get away without running her over." He acknowledged that she fell over when he pushed her.

¶ 14. The jury acquitted defendant of first-degree aggravated domestic assault relating to the incident in the motel room but returned a guilty verdict for second-degree aggravated domestic assault for actions taking place on the side of the road.

¶ 15. The central issues in this appeal are (1) whether the trial court erred by admitting complainant's 911 call and statements to other testifying witnesses while excluding the impeaching evidence of complainant's FIPO conviction, and (2) if there was an error, whether that error was harmless.

5

¶ 16. Defendant argues to this Court that, under Rules 609 and 806 of the Vermont Rules of Evidence, evidence of complainant's FIPO conviction should have been admitted to impeach complainant as a hearsay declarant. Defendant argues that the error was not harmless because the State's entire case rested on the credibility of complainant's hearsay statements. The State argues that defendant was required to cite the specific rule that was the basis for admission and because he failed to cite Rule 806 instead of Rule 609, defendant did not properly preserve this issue. Thus, the State argues we must review only for plain error. See V.R.Cr.P. 52(b); State v. Bangoura, 2017 VT 53, ¶ 6, __ Vt. __, 171 A.3d 50 ("Because defendant did not preserve either of his objections in the trial court, we review only for plain error."). We agree with defendant.

¶ 17. It is well established that "[t]o properly preserve an issue for appeal a party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." State v. Hinchliffe, 2009 VT 111, ¶ 32, 186 Vt. 487, 987 A.2d 988 (quoting State v. Ben-Mont Corp., 163 Vt. 53, 61, 652 A.2d 1004, 1009 (1994)). Further, "where a litigant's argument is clear enough for the trial court to evaluate it and for an opponent to respond to it, the claim is adequately preserved for appeal." State v. Mumley, 2009 VT 48, ¶ 18, 186 Vt. 52, 978 A.2d 6.

¶ 18. Rule 806 governs attacking and supporting the credibility of a hearsay declarant. The rule reads: "When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked . . . by any evidence which would be admissible for those purposes if declarant had testified as a witness." V.R.E. 806. Rule 609 of the Vermont Rules of Evidence governs the impeachment of witnesses by evidence of criminal convictions. The rule reads: "For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted . . . by extrinsic evidence, but only if the crime . . . [i]nvolved untruthfulness or falsification . . . ." V.R.E. 609(a)(1). Vermont's Rule 806 is virtually identical to Federal Rule 806. See Reporter's Notes, V.R.E. 806 (noting a "minor verbal change to make

6

clear that the second and third sentences of the rule embrace all statements referred to in the first sentence"). As the advisory committee notes to Federal Rule 806 explain, "[t]he declarant of a hearsay statement which is admitted in evidence is in effect a witness. His credibility should in fairness be subject to impeachment and support as though he had in fact testified. See Rules 608 and 609."

¶ 19. Rule 806 is a rule of interpretation. It merely makes clear that Rule 609's method of impeachment through prior convictions is applicable to hearsay declarants. Rule 609 provides the operative requirements and limitations to the process of impeaching an individual using past criminal convictions. Because Rule 609 provides these requirements, it cannot be said that Rule 806 is the basis for admission of this type of impeaching evidence against a hearsay declarant. Rule 609 is.

¶ 20. Based on this understanding, defendant properly referred to the rule that was the basis for admission at various points before and during trial, and thus preserved this issue for appeal. Defendant cited Rule 609 during the hearing on the motion in limine. The trial court properly determined in its pretrial ruling that complainant's FIPO conviction was relevant and admissible for impeachment under Rule 609. Defendant again cited Rule 609 when he attempted to admit evidence of complainant's conviction at trial after complainant's hearsay statements were admitted. Both the trial court and the State were presented with defendant's argument—that complainant's hearsay statements were admitted into evidence and thus were subject to impeachment under the rules—with sufficient clarity and specificity to address and respond to it. While defendant could have further supported or clarified his argument by citing Rule 806, not specifically citing it was not fatal to his preservation of the issue.

¶ 21. "Our standard of review on evidentiary rulings is deferential." State v. Herring, 2010 VT 106, ¶ 4, 189 Vt. 211, 19 A.3d 81. Therefore, it is ordinarily defendant's burden to prove that the trial court erred in excluding evidence. Id. However, here, the State concedes that the

7

trial court erred when it failed to admit the impeaching evidence of complainant's FIPO conviction.[*] Therefore, because the exclusion of complainant's FIPO conviction was in error and the issue was preserved, we review under the harmless error standard.

¶ 22. Under Rule 52(a) of the Vermont Rules of Criminal Procedure "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." The State bears the burden of proving that an error meets this standard and thus is harmless. State v. Scales, 2017 VT 6, ¶ 20, __Vt. __, 164 A.3d 652. For an error to be harmless, this Court "must find beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error." Id. (quoting State v. Oscarson, 2004 VT 4, ¶ 30, 176 Vt. 176, 845 A.2d 337)); see also State v. Lipka, 174 Vt. 377, 384, 817 A.2d 27, 33 (2002) ("We can uphold a criminal conviction, despite a confrontation clause error, if we find that the error was harmless beyond a reasonable doubt.").

¶ 23. In reviewing defendant's claim that the trial court's exclusion of evidence affected the verdict, this Court does "not play the role of factfinder; rather, our focus is on the jury and whether it would have returned a guilty verdict even if the excluded testimony had been admitted." State v. Haskins, 2016 VT 79, ¶ 17, 202 Vt. 461, 150 A.3d 202. To do this, we must consider and balance two components: "(1) the strength of the case against defendant without the excluded evidence, and (2) the strength of the excluded evidence." Id.

¶ 24. This Court's reasoning in one of our recent cases, Haskins, is applicable here. In Haskins, the defendant was charged with attempted murder. The defendant's theory at trial was that he was framed by others who were present when the stabbing occurred to protect the true perpetrator. On appeal, the defendant argued that the trial court erroneously excluded testimony that he alleged was exculpatory. This Court agreed that the trial court erred in excluding the

---

[*] The State did not argue that there was no error. Instead, it argued that the error did not rise to the standard necessary for reversal under a plain error analysis.

proffered testimony, but we held that the error was harmless after weighing the strength of the State's case and strength of the excluded evidence. Id. ¶¶ 15, 32. The Court conducted a thorough analysis of the two factors and discussed where findings of harmless error would and would not be appropriate. Id. ¶¶ 18-31. The same reasoning applied to this case leads us to conclude that the trial court's error was not harmless.

¶ 25. First, the Haskins court found that the State's case was very strong because, throughout trial, the State introduced extensive evidence identifying the defendant as the individual who stabbed the victim. The State presented three eyewitnesses to the stabbing, each accurately identifying what the defendant looked like and what he was wearing on the night at issue. Further, the State introduced evidence that the defendant carried a knife with him on a daily basis and that he had the knife on the night of the stabbing. The State also introduced significant evidence of the defendant implicating himself as the stabber. With all of this evidence, this Court found that the State's case against the defendant was very strong. Id. ¶¶ 18-24.

¶ 26. In contrast, here we find that the State's case was comparatively weak. The State's witnesses testified that complainant had injuries that appeared to be consistent with her version of the story, as elicited through her 911 call and her statements to first responders. Defendant admitted being with complainant on the night of the alleged assault and pushing her out of his car, but denied that he struck her in the motel or on the side of the road. After all the evidence was presented by both sides, the case essentially came down to complainant's word against defendant's—whose version of events was the truth about what happened on the side of the road that night. The State lacked the strong direct evidence and support that was present and led to the harmless error finding in the Haskins case.

¶ 27. Second, in examining the strength of the excluded evidence, we consider "the extent to which the offending evidence was inculpatory, whether it was cumulative or duplicative of other evidence, and how prominent it was at trial." Haskins, 2016 VT 79, ¶ 28 (quotation

9

omitted). This Court has emphasized in the past that "where, as here, the outcome hinges largely on the credibility of the witnesses, evidence concerning credibility is particularly important." State v. Covell, 146 Vt. 338, 341, 503 A.2d 542, 545 (1985). For this reason, a "court must be particularly cautious in exercising its discretion to preclude impeachment evidence offered by a defendant." Id., 503 A.2d at 544.

¶ 28. Applying this analysis, this Court found that the excluded evidence was relatively insignificant. 2016 VT 79, ¶¶ 28-32. There, the defendant proffered testimony of a police officer, which the defendant argued bolstered his theory of framing. We determined that the evidence proffered through the police officer's testimony was undisputed and thus duplicative. Id. ¶ 29. Second, we held that "[t]he excluded testimony did not go to the ultimate issue of defendant's guilt or innocence, but rather was intended to strike at the credibility of those group members who testified against [the] defendant, thereby contributing to [the] defendant's theory that he had been framed." Id. ¶ 30. However, we went on to emphasize that the "case was not a swearing contest between a complainant and a defendant." Id.; see, e.g., State v. Groce, 2014 VT 122, ¶ 21, 198 Vt. 74, 111 A.3d 1273 (deciding whether trial court erred by introducing evidence and noting that "[a]lthough other witnesses testified as to events immediately before and after the incident, only defendant and complainant testified as to what happened during the alleged sexual encounter"); Herring, 2010 VT 106, ¶ 13 (refusing to find erroneous admission of evidence harmless and stating that right to impeach complainant's credibility "is most important when the prosecution's case . . . essentially depends upon the credibility of a single witness"); State v. Brillon, 2010 VT 25, ¶ 21, 187 Vt. 444, 995 A.2d 557 (refusing to find erroneous admission of evidence harmless because "[a]lthough other witnesses testified to events that occurred before and after the actual altercation, only defendant and [complainant] testified as to what occurred [during the incident]" and "[t]hus, the case ultimately came down to a credibility determination between defendant and [complainant]"); State v. Hazelton, 2006 VT 121, ¶¶ 20-21, 181 Vt. 118, 915 A.2d 224 (holding

that trial court committed reversible error by allowing two witnesses to recite complainant's testimony to bolster her credibility when case turned on competing stories by complainant and defendant). Unlike previous cases in which we found reversible error, in Haskins, instead, "there was substantial additional inculpatory evidence from multiple witnesses pointing to defendant, and the excluded testimony directly attacked the credibility of a nonwitness, not a complainant." Haskins, 2016 VT 79, ¶ 30. Thus, this Court concluded that "it is difficult to say that the excluded testimony had any real significance" because there was not such a swearing contest. Id.

¶ 29. Here, the jury was faced with the competing narratives of complainant and defendant. The outcome of the case hinged on the credibility of these two individuals, and thus we must take extra caution when analyzing the effect of the exclusion of defendant's impeachment evidence—complainant's FIPO conviction. In August 2015, four months before this alleged assault, complainant was convicted of giving false information to a police officer. While the State here has presented corroborating evidence to support complainant's testimony, the strength of the excluded evidence cannot be denied. The evidence of complainant's very recent FIPO conviction had the potential to seriously undermine complainant's credibility in a case where she is accusing someone of an otherwise unwitnessed domestic assault. The jury could reasonably find that, because complainant had lied to police previously, her statements to testifying witnesses were less credible than they would have been otherwise.

¶ 30. The dissent argues that "[t]he State provided overwhelming direct evidence of complainant's physical injuries and very strong circumstantial evidence that defendant caused the injuries, all of which corroborated complainant's statements." Post, ¶ 3. However, this ignores two necessary observations. First, the jury acquitted defendant of the first-degree domestic assault charge, which was based on the allegation that defendant had strangled complainant while they were in the motel room. From this, we can infer that the jury did not find the circumstantial evidence "very strong" at all—they were so unsure of its strength that they could not unanimously

11

agree to convict defendant under that charge. Second, at issue in this appeal is defendant's second-degree aggravated domestic assault conviction, which was based on the allegation that defendant recklessly inflicted injuries on complainant when defendant ordered her out of his car and left her on the side of the road. The dissent correctly points out that the State presented direct evidence of complainant's physical injuries. However, the question of whether or not complainant had suffered injuries was secondary to the question of who caused those injuries, for which the State presented no direct evidence and some circumstantial evidence that was weak at best.

¶ 31. In sum, when comparing the State's case, which consisted largely of circumstantial evidence, to the overwhelming relevance and strength of the excluded evidence, we cannot say beyond a reasonable doubt that the jury would have returned a guilty verdict if complainant's FIPO conviction was admitted. Thus, we hold that the exclusion of complainant's FIPO conviction was not harmless error.

¶ 32. Defendant's conviction must be reversed, and a new trial is required. Because we reverse based on defendant's first claim on appeal, we do not reach defendant's second argument—that excluding admissible impeachment evidence violated defendant's rights to due process, cross-examination, and to present a defense guaranteed by the United States and Vermont Constitutions—and third argument—that the court erroneously entered a written judgment and sentence convicting defendant of an improper charge.

Reversed and remanded.

FOR THE COURT:

_____

Associate Justice

¶ 33. **REIBER, C.J., dissenting.** I agree with the majority that the trial court erred in excluding the complainant's impeachment evidence. I also agree with the harmless-error analysis

12

the majority follows, in which the Court considers (1) the strength of the State's case, including the strength of the defense, and (2) the strength of the erroneously excluded evidence. But I do not agree that the State's case here was weak or that the excluded evidence was highly significant. I would find harmless error. Therefore, I respectfully dissent.

¶ 34. In general, this Court has considered the State's case weak when the evidence consists primarily of the complainant's and defendant's testimony, with little or no corroborating evidence. State v. Herring, 2010 VT 106, ¶ 10, 189 Vt. 211, 19 A.3d 81 (finding error not harmless when the corroborating evidence was "all contested and not objectively inviolable," and there was "no independently incriminating proof beyond a reasonable doubt"). In those circumstances, which we have characterized as a "swearing contest" between the complainant and the defendant, we have frequently found errors not harmless. See id. For example, in State v. Groce, there was no physical evidence to corroborate the complainant's testimony, and the witness testimony was weak. 2014 VT 122, ¶¶ 20-21, 198 Vt. 75, 111 A.3d 1273. The Court stated:

> Although other witnesses testified as to events immediately before and after the incident, only defendant and complainant testified as to what happened during the alleged sexual encounter. . . . Without more, this evidence is not strong enough to conclude that the jury would have been convicted beyond a reasonable doubt without the erroneously admitted hearsay evidence.

Id. ¶ 21; see also State v. Lipka, 174 Vt. 377, 385, 817 A.2d 27, 34 (2002) (describing case as "a classic swearing contest" and finding error not harmless where there was no evidence to corroborate complainant's testimony). In contrast, in State v. Oscarson, this Court concluded the error was harmless with regard to the second conviction in the case because the complainant's testimony was "strongly corroborat[ed]" by other evidence, and the defendant's testimony was wholly uncorroborated. 2004 VT 4, ¶¶ 54, 57, 61, 176 Vt. 176, 845 A.2d 337; see also State v. Haskins, 2016 VT 79, ¶ 30, 202 Vt. 461, 150 A.3d 202 (finding case "not a swearing contest between a complainant and a defendant" because "there was substantial additional inculpatory

13

evidence from multiple witnesses pointing to defendant, and the excluded testimony directly attacked the credibility of a nonwitness, not a complainant").

¶ 35. The majority categorizes this case as a swearing contest, saying that "the jury was faced with the competing narratives of complainant and defendant," so that the "outcome . . . hinged on the credibility of these two individuals." Ante, ¶ 29. This is not accurate. Complainant and defendant certainly presented conflicting accounts, but complainants and defendants generally do. What matters is whether there is "more" than conflicting accounts, and here there was substantially more evidence. Cf. Groce, 2014 VT 122, ¶¶ 20-21 (saying evidence consisting of witness testimony regarding the time frame of the alleged incident, complainant and defendant testimony about the alleged sexual assault, and no physical evidence, was insufficient "without more," so error was not harmless). The State provided overwhelming direct evidence of complainant's physical injuries and very strong circumstantial evidence that defendant caused the injuries, all of which corroborated complainant's statements. In addition, defendant's testimony was entirely uncorroborated. In these respects, this case is closely analogous to Haskins. 2016 VT 79, ¶¶ 18, 25, 32. Just as in Haskins, this case is not a "swearing contest." Id. ¶ 30.

¶ 36. Further, looking only at the evidence apart from complainant's statements, the State's case was strong circumstantially. The clerk at the Motel 6 on Putney Road in Battleboro testified that complainant was uninjured earlier on the evening in question; there was yelling and banging in the motel room that defendant rented, and someone who sounded like complainant seemed to be present and sobbing; and after the disturbances in defendant's room, a sobbing woman walked across the parking lot away from the direction of defendant's room, her shoes making the same distinctive sound as complainant's. Police officers and medical responders testified that complainant made an emergency phone call soon after midnight, and they found her crying by the side of Putney Road, wearing no shoes. They also testified, together with an emergency room nurse, that she had bruising around her neck, which was covered with make-up,

14

and bruising and swelling around both eyes, which was fresh. The evidence included pictures of these injuries. After speaking with complainant, the police officers investigated the motel room; they found clothes and pills scattered around the floor, and the bathroom door was missing. A state trooper testified that defendant was pulled over for speeding around one o'clock in the morning approximately seventy-seven miles north of Battleboro, and he was processed for driving while intoxicated.

¶ 37. Just as in Haskins, this evidence created a strong case for the State. See 2016 VT 79, ¶ 18 (finding State's case strong despite "conflicting testimony" because "the State presented substantial evidence identifying defendant as the person who stabbed the victim"). There was overwhelming evidence that complainant was injured and that the injuries occurred around the same time that she was with defendant, and there was strong circumstantial evidence that defendant caused the injuries.

¶ 38. Moreover, also as in Haskins, the defense was weak. See id. ¶ 25 (stating that "there was very little evidence to bolster defendant's theory"). Defendant's testimony was attenuated. He testified that he and complainant argued in the motel room, she became violent toward him, and he left to sleep in his car. Around midnight, she woke him so he could drive her to the store, and on the way, she became violent toward him again. When she got out of his car, she began to kick it hard enough to damage it. He pushed her away from his car and drove away quickly, leaving her completely uninjured and wearing her shoes. He also said the motel room was not in disarray when he left it.

¶ 39. Complainant's version of events is corroborated by the evidence of her injuries, which were consistent with the reported assault, the disarray of the hotel room, and the timing from the clerk's testimony and the emergency phone call. There is no evidence to corroborate defendant's story, and there is evidence to contradict it. Defendant claimed he left complainant uninjured around midnight, and soon afterwards police officers and medical personnel found her

with covered-up bruises around her neck and fresh bruises around her eyes. There was evidence that defendant's left hand was swollen, which defendant testified was due to an earlier injury. There was no evidence of other injuries. Defendant did not provide any evidence that his car was damaged.

¶ 40. To be sure, even when the State's case is strong, an error is not harmless if it contributed to the conviction. See Oscarson, 2004 VT 4, ¶ 46 (holding error not harmless because Court could not "say beyond a reasonable doubt that the erroneously admitted evidence did not contribute to the jury's verdict" (quotation and alteration omitted)). "We treat the damaging potential of the excluded impeachment evidence as fully realized . . . ." State v. Malshuk, 2004 VT 54, ¶ 14, 177 Vt. 475, 857 A.2d 282 (mem.). Where the excluded evidence is of "limited probative value" or likely to have minimal impact, the error is more likely to be harmless. See State v. Atherton, 2016 VT 25, ¶ 25, 201 Vt. 512, 144 A.3d 311 (finding harmless erroneous exclusion of evidence that witness had prior conviction for providing false information to police officer because "its impact would have been minimal given the limited and cumulative nature" of witness's testimony); State v. Fuller, 168 Vt. 396, 408-09, 721 A.2d 475, 484 (1998) (finding excluded evidence had "limited probative value at best" and concluding error was harmless, given weakness of excluded evidence and strength of other evidence supporting State's case).

¶ 41. Here, the excluded evidence was a "self-authenticating document" indicating that complainant had previously been convicted of providing false information to a police officer. Only the fact of the conviction was offered, "without any discussion about how, why, [or] where." As defense counsel represented to the trial court, this evidence was "relatively innocuous." Certainly, the context of the conviction—an apparently false claim that complainant's father had assaulted her—could have had an impact on the jury's deliberations. But the context was never excluded; it was not offered. What was excluded was merely the fact of the conviction. As in Haskins, "[t]he excluded [evidence] did not go to the ultimate issue of defendant's guilt or innocence," and "it is

16

difficult to say that the excluded [evidence] had any real significance." 2016 VT 79, ¶ 30; see also Oscarson, 2004 VT 4, ¶ 61 (finding harmless error where the error was "tangential" to State's case). I cannot conclude that the conviction document alone could so shake the jury's assessment of the scope and depth of the State's evidence as to change its verdict. Given the strength of the State's case and the minimal value and impact of the excluded evidence, I would hold that the error was harmless. I respectfully dissent.

¶ 42.   I am authorized to state that Justice Carroll joins this dissent.


_____

Chief Justice